[Civ. No. 9634. First Appellate District, Division One.—June 20, 1935.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Respondent, v. AMERICAN BUILDING MAINTENANCE COMPANY OF LOS ANGELES (a Corporation), Appellant.

[Civ. No. 9635. First Appellate District, Division One.—June 20, 1935.]

UNITED STATES FIDELITY AND GUARANTY COMPANY (a Corporation), Respondent, v. AMERICAN BUILDING MAINTENANCE COMPANY OF SAN FRANCISCO (a Corporation), Appellant.

S. Laz Lansburgh and S. Joseph Theisen for Appellants.

Walter E. Drobisch and Horace W. B. Smith for Respondent.

TUTTLE, J., *pro tem.*—These actions were brought to recover the balance of premiums alleged to have been due upon four policies of insurance, two of which were issued under the Workmen's Compensation, Insurance and Safety Act and two under Contractors' Public Liability. The actions were tried separately, but consolidated upon this appeal. In one action judgment went for plaintiff in the sum of $9,070.11, and in the other a recovery of $4,304.45 was had. This appeal is prosecuted from said judgments, and is taken in each case upon the judgment roll alone.

The appellant in one action was doing business in Los Angeles; in the other the appellant was engaged in business in San Francisco. The business of both appellants was that of "building maintenance", which consists in rendering janitorial service, such as the caring for and cleaning buildings, including window cleaning, for owners or tenants. On February 5, 1928, respondent duly issued to each appellant one policy of workmen's compensation insurance and one policy of contractors' public liability insurance, and on February 5, 1929, these policies were renewed to cover another year. On May 17, 1930, respondent, the insurance carrier under all of said policies, filed its complaints against each appellant herein. The complaints are identical in form. Each sets forth the execution of the four policies, and alleges on information and belief that respondent had earned premiums in an amount in excess of the premium already paid by appellants; that the exact amount so earned could not be ascertained except through the action, and that appellants had refused, upon the demand of respondent, to permit the latter to inspect the payrolls of appellants. It is prayed that the court ascertain the amount of premiums due from appellants, and that respondent have judgment for such amount after deducting the amount already paid to it as premiums due under said policies. Findings were made upon all issues in favor of respondent, and judgment was entered against appellant from

San Francisco in the sum of $9,070.11, and against the other appellant in the sum of $4,304.45, these being the amounts in each case by which the earned premium, as disclosed by the books of respondent, exceeded the amount of premiums theretofore paid by appellants.

The main contention in the case arises over the construction of the manual of rates approved by the state insurance commissioner. Although the cases are before us upon the judgment rolls alone, the parties have agreed upon the voluminous findings which appear to embody all pertinent portions of the manual necessary to a determination of the questions involved. The public liability policies are also subject to this manual. The rates in respect to such policies are much lower than upon the others, consequently recovery was had almost entirely upon the policies of workmen's compensation insurance.

In appellants' opening brief there are four "topics" presented and discussed, but nowhere is it pointed out just what error is relied upon for a reversal of the case. In answer to a challenge upon this matter by respondent, the closing brief of appellants finally makes the contention that the findings are insufficient to support the judgment. The findings, as we have stated, contain excerpts from the manual under which the business of appellants was classified in the matter of fixing the premium rates. It is urged that the court erred in such *classification* and thus greatly increased the amount of premium to be paid by appellants.

Referring to the contention last stated, each cause of action presents substantially the same question as the manual rates apply to both compensation insurance and public liability. We will consider the first cause of action based upon premiums due under a policy of workmen's compensation insurance. This policy, as written, classified appellants' business as follows:

| CLASSIFICATION OF OPERATIONS. | Rate per $100, of Remuneration. |
| --- | --- |
| BUILDINGS—operation (contractors) all employees engaged in care, custody and maintenance of premises, the operation of elevators, heating, lighting and power apparatus; excluding extraordinary additions, alterations or repairs..........9014 | 1.42 |

The foregoing statement of the nature of appellants' business operations is given under the main heading, "DECLARATIONS", and is presumed to be based upon information given by the assured. It will be observed that there is no express mention of "window cleaning" in such declaration, although that operation is mentioned in a footnote found in the rate manual under this classification. Respondent concedes, however, that the "care, custody and maintenance of premises" includes any window cleaning which may be necessarily involved in the operations mentioned. In setting up the rate basis of appellants' operations *as disclosed by the evidence,* the trial court found that, due to the method of operation pursued by appellants, "window cleaning" did not come under the general classification No. 9014 as fixed in the policy, but that it was a *separate enterprise* and came under classification No. 9170. This finding is as follows:

| "Code. | Classification of Work. | Amount of Payroll. | Rate. | Earned Premium. |
|---|---|---|---|---|
| 9170 | Window Cleaning | $8,378.77 | $21.49 | $1,800.60" |

The foregoing classification, it will be observed, in respect to a portion of appellants' payrolls, raised the rate fixed in the policy from $1.42 per hundred to $21.49 per hundred, and herein lies the burden of appellants' complaint, as almost their entire attack upon the findings is made in connection with their *window cleaning operations* and the proper rate to be applied to the same.

The court found that out of a total payroll of $304,070.17, only a small portion thereof, to wit, $8,378.77, was classified as coming under rate No. 9170 notwithstanding, according to appellants, that their principal business was building maintenance, which included the "care and custody" of premises.

Respondent points out the following finding as the basis for the power of the trial court to thus raise the rate on a portion of the payroll: "All the employees of defendant were, during each of said periods, engaged as shown by the various compilations hereinabove set forth, in the care, custody and maintenance of premises, the operation of elevators, heating, lighting and power apparatus; excluding extraordinary additions, alteration or repairs; including, however, window cleaning therein and as a part thereof, and during

all of said times certain of the employees of defendant were exclusively engaged in performing window cleaning in buildings wherein defendant performed no other work than said window cleaning in or about the care, custody or maintenance of said premises, and the defendant paid the said employees so engaged in the operation last aforesaid during the respective periods covered by said policies, remuneration as shown by the various compilations hereinabove set forth opposite the classification 'Window Cleaning', being Code No. 9170; that at the time each of said policies was issued as aforesaid, defendant did not disclose to plaintiff that said employees last mentioned were engaged as last aforesaid; that during all of said times certain employees of defendant whose compensation was as shown in said compilation, were engaged in commissary work incidental to the maintenance of certain buildings.''

Assuming, as we must here, that this finding is true, will it support the judgment? This leads to a construction of the policies and the law governing the situation. ▮ At the outset it must be remembered that ''a contract of compensation insurance is subject to the same general rules as contracts of insurance generally'' (27 Cal. Jur., p. 558), and that ''when a policy [of compensation insurance] is uncertain as to the operations intended to be covered, under section 1654 of the Civil Code the policy will be construed most strongly against the insurer who drew it and caused the uncertainty to exist''. (27 Cal. Jur., p. 561.) ▮ All matters relating to the classification of operations and rates to be applied and all matters of administrative detail are contained in the Manual of Rates approved by the State Insurance Commissioner, which manual is before the court, by stipulation, on this appeal. Would the fact that appellants ''performed window cleaning in buildings wherein defendant performed no other work than said window cleaning'' operate so as to take them out of the classification mentioned in the policy, No. 9014, and place them, as to a portion of their payroll arising out of this work, under rate No. 9170, which is predicated upon ''window cleaning'' as a separate enterprise? Respondent has failed to cite any authority for such a change in classification. It quotes the following portion of the Rate Manual: ''(b) If, however, there are DISTINCT ENTERPRISES (meaning thereby operations which are specifically classified

in this Manual but not operations normally prevailing in the business covered by the governing classification) conducted in a specific location of a given risk by the same employer and the ENTIRE WORK IN EACH ENTERPRISE is conducted either in a SEPARATE BUILDING or on a SEPARATE FLOOR OR FLOORS OF A BUILDING, or on the SAME FLOOR in SEPARATE DEPARTMENTS divided by STRUCTURAL PARTITIONS without interchange of labor, the employer conducting each of such enterprises as a SEPARATE UNDERTAKING with SEPARATE RECORDS OF PAYROLL, then such separate undertaking SHALL EACH be classified according to the Manual and the proper premium rate applied to EACH.''

As we construe the foregoing portion of the manual, it applies to those enterprises which operate *"within"* a building, such as a manufacturing concern. This is evidenced by the mention of ''floors'' and ''partitions'', and the conducting of work *"in"* a separate building''. It was clearly never intended to apply to a concern doing janitorial service, where the work is *upon* or *about* the building.

It may be, as pointed out by respondent, that to permit appellants to do all their work under one classification which has a comparatively low rate would work an injustice to other concerns which do window cleaning and nothing else. The latter would obviously take the rating found by the court here. We believe this matter is one for the rate-making authorities to consider, and not the courts. We therefore hold that under the classification in the policy, appellants could conduct their window cleaning in any manner they wished, and that such operations would take the general rate covering the maintenance, care and custody of buildings, as specified in the policy, provided that window cleaning *is not the principal business of the insured.* The finding of the trial court in the amount of payroll arising out of *all* its operations, and the amount arising out of window cleaning *alone,* may be accepted as a finding that the principal business of the assured was *not* window cleaning, but *building maintenance.* There is no finding that the principal business of appellants was window cleaning. It follows, therefore, that the portion of the judgment which allows a recovery for increased premiums based upon this change of classification is erroneous, being without support in the findings.

■ We now take up the matter of the increase in the *rate* upon the business classified in the policy—''building maintenance''. As we have stated, almost the entire payroll of appellants was found by the court to come under classification No. 9014, where the policy rate was *$1.42* per hundred dollars. The court found, however, that the rate to be applied was not $1.42, but *$1.99* per hundred. The increased rate was not brought about by any change in *classification*, but was due solely to the fact that after the policies were executed the *rate* was increased. When the policies of February 5, 1928, were issued, the rate was fixed at $1.42. When the policies of February 5, 1929, were issued, they contained an attached endorsement to the effect that the rate was increased 145 per cent. Appellants do not question the latter increase for the second year, but they strenuously insist that other increases in rates are contrary to law. They admit ''that the 1929 endorsement increasing the premium to 145% was attached to the policy at the time of its issuance and that it thus became a part of the contract''. It appears from the findings that on February 14, 1928, the insurer mailed to appellants an endorsement to be attached to the policy, which notified the latter that the policy rate was increased to 140 per cent. On August 13, 1929, a similar document was mailed, raising the premium 4.1 per cent. Appellants do not question the right of the insurer to raise the rates, but they insist that the insurer did not follow the law in attempting to put the raised rates into effect. The rate manual, which is in effect the law, provides as follows: ''Any policy correction required by the Bureau which changes the wording of any *classification* [italics ours] involving an increase in rate must be accepted by the assured and a copy of any such correcting endorsement must be filed with the Bureau and *must bear the signature of the assured evidencing such acceptance.*''

We do not believe that the portion of the manual last quoted is applicable to the situation. The endorsements did not ''change the wording of any classification''. They did not purport to have anything to do with a classification, but left the classification in the policy just as it was written. They simply notified the insured that ''the earned premium under this policy shall be calculated upon 140 per cent of the rates set forth in the schedule of this policy''. ■

The policy provides that rates may be modified, in the following language: ''This Policy is issued by the Company and is accepted by this Employer with the agreement that the rates of premium are subject to modification as of the effective date of such modification in accordance with the rating plans then established by the California Inspection Rating Bureau and approved by the Insurance Commissioner of California, such modification, if any, to be expressed by endorsement attached to the Policy. It is further agreed that subject to the approval of the Insurance Commissioner the rates of premium are subject to change if during the term of this policy any amendment affecting the benefits provided by Workmen's Compensation Law become effective, such change, if any, to be expressed by an endorsement naming the effective date thereof.''

The trial court found that these endorsements were attached to the policies. This is all that is required, under the terms of the policy, to make effective any modifications in the rate of the premium. It therefore follows that rate increases under attack here were lawfully put into effect, and appellants were bound to pay any increase in the premium arising therefrom.

Finally, it is urged that the court erred in allowing interest upon the balance of the premium found due, from the *date of each policy*. ''A *liquidated* claim, whether oral or written, carries with it as a matter of law interest from the time it was due, in the absence of any agreement to the contrary. And a claim may be said to be liquidated so as to bear interest when the amount due or to become due is fixed by law or by agreement between the parties.'' (Italics ours.) (33 Cor. Jur., p. 210.) Under the policies here, the premium paid in advance was to be ''applied on the final premium adjustment under the policy''. As to the ''deposit premium'', to be paid upon the execution of the policy, there can be no question that it is a liquidated claim, and would bear interest if not so paid. As to any premium found due upon ''final adjustment'', it would appear that such demand is an unliquidated demand, and not interest bearing. ''In order to recover interest there must be a fixed and determinate amount which would have been tendered and interest thereby stopped.'' (33 Cor. Jur., p. 211.) The premium, under a policy of this character, is subject to final adjustment at the

end of the term. This adjustment is the matter of computing the amount actually paid to employees during the period covered, and also involves the matter of classification. The complaints here seek relief which is analogous to a discovery. Plaintiff alleges that it does not know whether any additional premium is due or not. It asks the court to examine into the matter and make a finding upon this issue. In our opinion such a claim is clearly unliquidated. It is earnestly contended by respondent that the conduct of appellants in refusing, upon demand, an inspection of their books as provided in the policy alters the rule last stated. It is argued that if appellants had acquiesced in such demand, the additional premium would have been readily ascertained, and the claim would then have been a liquidated one. We cannot see the logic of this contention. Whether the additional premium was fixed through mutual consent or by action of the court is immaterial. The demand does not lose its unliquidated character through the failure of appellants to make an amicable adjustment. Appellants should not be penalized for insisting upon an adjudication of their rights in the premises. We therefore hold that the judgment was erroneous to the extent that it included such interest.

While the findings upon the essential and material facts will support a judgment in accordance with the views expressed herein, they contain many computations based upon the erroneous conclusions made by the trial court. It is therefore ordered that the judgments be reversed, with directions to the trial court to enter findings and judgments in accordance with this opinion. Neither party will recover its costs upon this appeal.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 20, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 19, 1935.