[Civ. No. 5039.   Fourth Dist.   Feb. 10, 1955.]

H. T. GOODWIN, Appellant, v. ELWOOD ALSTON et al., Respondents.

Albert Lee Stephens, Jr., and Guy Richards Crump for Appellant.

Best, Best & Krieger, James H. Krieger and Arthur L. Littleworth for Respondents.

BARNARD, P. J.—This is a foreclosure action, with a counterclaim based upon the Usury Law.

The defendant Alston owned 400 acres of land on which the defendant Fleming held a trust deed securing a note for $50,000, dated December 12, 1946. In 1948, in two transactions, the plaintiff advanced funds for the purpose of financing the raising of potatoes on this land. In March, he advanced $40,000 and Fleming assigned to him the $50,000 note and trust deed and Alston gave him a crop mortgage in that amount as additional security. Goodwin received $51,544.90 from the proceeds of the potatoes, the last payment being made on September 11, 1948, and on that day he satisfied the crop mortgage and reassigned the trust deed

to Fleming. On the same day the parties entered into a second transaction, in order to finance a fall crop, and Goodwin advanced another $65,000, receiving a crop mortgage for $70,000 executed by the Alstons in his favor, a reassignment to him of the $50,000 note and trust deed held by Fleming, an assignment of another note and trust deed for $20,000 executed on that day by Alston in favor of Fleming, and an order on the potato broker for 4,000 sacks of potatoes. Admittedly, Goodwin received $15,958 in March, 1949 from the sale of the 4,000 sacks of potatoes. He also received in March and April, 1949, an additional $18,136.92 from the proceeds of the crop.

This action was brought in October, 1949, to foreclose these trust deeds and the crop mortgage, the plaintiff alleging that he had purchased the notes and trust deeds from Fleming and that Alston had conveyed the land to Fleming. Alston defaulted but Fleming filed an answer and cross-complaint on December 30, 1949, which was superseded by an answer and counterclaim filed on November 1, 1950, in which usury was charged and treble damages sought. With respect to the first transaction, the counterclaim alleged that usurious interest amounting to $11,544.90 had been collected by Goodwin. As to the second transaction, it was alleged that Goodwin had required a bonus of $5,000 for the $65,000 loan, and also a bonus of 4,000 sacks of potatoes for which he had received $15,958. It was also alleged that Goodwin had received $17,463.59 on account of the principal of the $65,000 obligation.

On the first trial of the action a jury found that both of these transactions were loans instead of sales of securities, and the trial court found them to be usurious and entered a judgment cancelling Goodwin's right to the trust deeds and crop mortgage and awarding Fleming a judgment for $50,293.62. On appeal that judgment was reversed (*Goodwin v. Alston*, 114 Cal.App.2d 713 [250 P.2d 722]), one of the grounds being that the $11,544.90 collected as interest and bonus on the first transaction could not be trebled since the action was filed more than a year after the payment was made. It was also pointed out that while the jury had found these transactions to be loans it was not found whether the loans were made to Fleming or to Alston. Some of the facts are more fully stated there, and need not be here repeated.

On September 9, 1948, Alston and his wife conveyed an undivided one-half interest in this ranch to Fleming and on

February 26, 1949, the Alstons deeded the entire ranch to Fleming. Prior to the new trial Fleming was adjudicated a bankrupt, and the trustee was ordered to defend this action and to prosecute Fleming's counterclaim on behalf of the bankrupt estate.

On the second trial, the jury specially found that both of these transactions were loans and not sales; that both loans were made to Fleming; that with respect to both loans it was Fleming who repaid the money which was paid; and that the 4,000 sacks of potatoes constituted a bonus for the $65,000 loan and was not a purchase of that amount of potatoes, as claimed by Goodwin. The court made findings accordingly and entered a judgment decreeing that Goodwin has no right, title or interest in the trust deeds and crop mortgage involved in the second transaction, and awarding Fleming a judgment against Goodwin in the amount of $18,261.65. In arriving at this result Fleming was given credit for the bonus and interest paid on the first transaction, $11,544.90; for interest on that amount at 7 per cent from September 11, 1948, to date of judgment, $4,359.17; for the potato bonus $15,958 trebled, $47,874; and for $2,019, being treble the $673.33 allocated by Goodwin to interest when the general payment of $18,136.92 was paid in March and April of 1949. Plaintiff has appealed from this judgment.

It is first contended that Fleming has no right to any counterclaim or offset in this action since the action is one by Goodwin as a pledgee to collect a pledge; that section 440 of the Code of Civil Procedure does not authorize such a setoff since Goodwin did not sue either Fleming or Alston on the $65,000 loan; that Fleming did not counterclaim against Goodwin "as trustee" and therefore Fleming's claim could neither defeat nor diminish Alston's debt on the pledged securities, as required by section 438 of the Code of Civil Procedure; and that Goodwin was entitled to a decree of foreclosure and to an award of attorney's fees even though, as trustee, he would be obliged to turn over all proceeds to Fleming.

■ Goodwin brought this action to enforce his right under the transaction, and it has been twice tried on the theory that he was the purchaser and owner of these securities, and not on the theory that he was a trustee foreclosing for the benefit of Fleming. He now contends that since the jury found, in effect, that these securities were pledged to him the law authorizes him to foreclose them and turn the pro-

ceeds over to Fleming. In our opinion, the general law with respect to pledges does not require such a useless and inconsistent procedure, and such a change in position on appeal is not justified. ██ There was a dispute throughout both trials as to whether or not these were loans, as to who the borrower was if they were loans, and as to who made such payments as were made. These matters, with other issues, were decided on conflicting evidence, all parties were before the court, Fleming was then the owner of the land subject to the trust deeds, and the court in this equitable action could properly determine all issues and settle the entire controversy. ██ It having been found that these were loans which had been made to Fleming and that Fleming had made the payments thereon, the necessary basis for a setoff and counterclaim existed. The evidence, while conflicting, is sufficient to sustain the findings made that these were loans made by Goodwin to Fleming, and that such payments as were made were made by Fleming. All payments made were from the proceeds of potatoes grown and the evidence justifies the inference that these proceeds would otherwise have gone to Fleming. A counterclaim was proper in this action. (*Stock* v. *Meek*, 35 Cal.2d 809 [221 P.2d 15].) ██ This counterclaim was not barred since the period had not run on it at the time this action was commenced. (*Jones* v. *Mortimer*, 28 Cal.2d 627 [170 P.2d 893].)

It is further contended that Alston made all of the payments to Goodwin which were made, and that since no payments were made by Fleming he cannot recover on his counterclaim. It is pointed out that it was alleged in the first cross-complaint and the later counterclaim that the "defendants" paid these various amounts to Goodwin, and that in another action Fleming testified, in connection with these two transactions, that he considered himself a guarantor and not one of the parties borrowing the money. ██ While the evidence was conflicting with respect to the person to whom the loan was made, and the person who made such repayments as were made, these were questions of fact which were resolved against the appellant. ██ The payments all came from potatoes raised on this ranch delivered to the potato broker, who turned over the proceeds to Goodwin. Nothing had been paid on the trust deed prior to 1948, and the trust deed gave Fleming the right, in case of any default, to take the proceeds of the crops. The evidence, with the reasonable inferences therefrom, supports the findings and conclusions to the effect

that Fleming was financing the project in the hope of collecting on his trust deed, that he took charge of the venture, conducted the negotiations, and entered into these various agreements, and that he was in full and complete control of what was to be done with the proceeds from the crops grown. While the jury could have found otherwise, its finding that the payments were made by Fleming is sufficiently supported by the evidence.

■ It is further contended that, assuming that all payments were made by Fleming, they should have been allocated to principal, leaving no basis for a penalty of treble the amount paid. It is argued that neither the $15,958, the proceeds from the 4,000 sacks of potatoes, nor the sum of $673.33, the amounts which were trebled, were allocated as interest by any of the parties to the transaction, and that since there was no legal obligation here these amounts should have been allocated to principal under section 1479 of the Civil Code. There was evidence that the amount of $673.33 was allocated to interest by the appellant himself when the general payments from the potatoes were received in March or April, 1949. With respect to the proceeds from the 4,000 sacks of potatoes, while again the evidence is conflicting, it supports the finding that these 4,000 sacks of potatoes were demanded by Goodwin and received by him purely as a bonus for the making of the loan, and without which the loan would not have been made. As such a bonus it comes within the meaning of the provisions of the Usury Law and was properly regarded as interest collected in violation of that law. While this was an unprofitable deal for the appellant and the penalties are harsh, he entered into these transactions for the purpose of taking profits not permitted by the statute and is subject to such penalties as are properly applicable.

■ It is next contended that the court erred in trebling the item of $673.33 allocated as interest when the general payment of $18,136.92 was made about April 1, 1949. It is argued that this item was not alleged or prayed for in the counterclaim. There was a prayer for other and general equitable relief and the matter was gone into at the trial. There was written evidence signed by Goodwin showing that when this payment was made he allocated $673.33 to interest and $17,463.59 to principal. This payment was made about six months before this action was begun. No reversible error appears in this connection.

Finally, it is contended that Fleming could not claim as an offset the overpayment of $11,544.90 in connection with the first transaction and at the same time claim interest on that amount at 7 per cent from the date of its payment on September 11, 1948, to the date of the judgment, and that the court erred in allowing such interest in the amount of $4,359.17.

This contention must be sustained. ■ The general rule is that unliquidated claims bear no interest prior to the time they are fixed and determined. (*McNutt* v. *City of Los Angeles*, 187 Cal. 245 [201 P. 592].) ■ A claim is liquidated when the amount due or to become due is fixed by law or by agreement between the parties. (*United States Fid. & G. Co.* v. *American B. etc. Co.*, 7 Cal.App.2d 683 [46 P.2d 984].) ■ The fact that the amount owed is certain or capable of being made certain by calculation, and the right to recover it is vested upon a particular date is an important consideration in determining whether a party is entitled to interest. (Civ. Code, § 3287.) There was a bitter controversy here over the nature of these transactions, whether or not they were loans, to whom any loans were made and as to who had made any payments. These were close questions which could have been decided either way and they were not all decided until after a second trial. ■ Moreover, immediately after the $11,544 was paid Fleming owed the appellant another item of $65,000. This $11,544.90 item could be, and was by the judgment, applied to the amount owed by Fleming. He got the benefit of the payment, reducing his debt, and he is not entitled to interest on that payment over the next four and one-half years. Assuming that interest on such a payment might be proper under some circumstances, it was not allowable under the facts of this case. The amount thus allowed as interest should be deducted from the judgment as rendered.

That part of the judgment awarding the defendant Fleming the sum of $18,261.65 is modified by deducting therefrom the sum of $4,359.17, leaving a balance of $13,902.48. As so modified the judgment is affirmed, the appellant to recover his costs on appeal.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 6, 1955.