[Civ. No. 24097. First Dist., Div. Four. Mar. 15, 1968.]

WELLS FARGO BANK, Plaintiff, Cross-defendant and Respondent, v. HELEN KINCAID et al., Defendants, Cross-defendants and Respondents; ESTELLE LATTA, Defendant, Cross-complainant and Appellant.

Peter A. Huppert and Leon H. Sorell for Defendant, Cross-complainant and Appellant.

Sullivan, Roche, Johnson & Farraher, Vincent J. Mullins and Gerald J. O'Connor for Defendants, Cross-defendants and Respondents.

Brobeck, Phleger & Harrison and E. Judge Elderkin for Plaintiff, Cross-defendant and Respondent.

DEVINE, P. J.—Wells Fargo Bank, as trustee of an *inter vivos* trust, has commenced this action for declaratory relief and for instructions. Defendants are Helen H. Kincaid (and Wachovia Bank and Trust Company, her assignee of part of whatever interest she may have) and Estelle Latta. Defendant Latta cross-complained against plaintiff and Helen Kincaid.

Helen Kincaid is the beneficiary under a power of appointment which was exercised by Lydia Hopkins. The trust was created by Lydia Hopkins' mother, Mary K. Hopkins, who was the widow of Timothy Hopkins. Timothy Hopkins acquired the estate from Mark Hopkins. There is no issue (at least for purposes of this appeal) as to the fact that the property presently in trust came to Timothy Hopkins as part of the estate of Mark Hopkins, or as converted assets thereof.

The superior court rendered summary judgment against appellant Latta, who laid claim to the properties of the trust, on the grounds that her cross-complaint is barred by the stat-

122

ute of limitations and that she was foreclosed by laches and by estoppel.

This is the claim of Estelle Latta, in substance: Mark Hopkins, the noted railroad magnate and financier, hereafter called the "real Mark Hopkins," never married and died intestate in San Francisco in 1878. His estate never has been administered, according to appellant. Estelle Latta is an heir of a brother of the real Mark Hopkins. The brother was an heir of the intestate capitalist. She and others claiming with her are entitled to the property which is the subject of this lawsuit. What happened to deprive her and her coheirs of their patrimony was that a second Mark Hopkins, an imposter, who was unrelated to the real Mark Hopkins, was allegedly married to Mary Frances Sherwood Hopkins. Upon the death of the real Mark Hopkins, this woman caused distribution of a large amount of the estate of the real Mark Hopkins to her. Through her it has come ultimately into the subject trust fund.

Appellant asserts in her brief that she had "recently" uncovered the fraudulent scheme by which the alleged wrong described above was perpetrated by distribution of the estate of the real Mark Hopkins in 1883. She asserts that various distributees concealed the fraud. She seeks impressment of a trust.

It is to be observed that in the early stages of the litigation in which appellant sought to upset the distribution of the Mark Hopkins estate, appellant's theory was not that there was an imposter Mark Hopkins, but that *the* Mark Hopkins was not really married to Mary Frances Sherwood Hopkins, to whom there was distributed, in 1883, the properties which are the source of the trust fund which is the subject of this suit. (See *Latta* v. *Western Inv. Co.*, 173 F.2d 99, 101.)

### *Applicability of Summary Judgment Procedure*

Appellant misconceives the purport of a motion for summary judgment, saying that the court (presumably, the trial court and perhaps the Court of Appeal, too) "should only determine whether the *contentions* raise any triable issues of fact which are not barred by the asserted affirmative defenses." (Italics supplied.) This is not the law of summary judgments (as distinguished from procedure relating to pleadings only, such as demurrer or motion for judgment on the pleadings). (*Hardware Mut. Ins. Co.* v. *Valentine*, 119 Cal.App.2d 125 [259 P.2d 70].) On motion for summary

judgment the court goes beyond mere *contentions* of the parties as expressed in the pleadings, and examines the affidavits containing matters which are within the personal knowledge of the affiants to decide whether the stated facts (which are taken as true) show that a good cause of action exists upon the merits or that there is a good and substantial defense. (Code Civ. Proc., § 437c; *Hicks* v. *Bridges,* 152 Cal. App.2d 146 [313 P.2d 15].) ▮ The purpose of the summary judgment is to dispose of cases and defenses which are unmeritorious in substance and fact which, by considering the pleadings only, might remain in court to the harm or harassment of parties and to the disadvantage and expense of the public, and in particular of other litigants. Of course, if there is even one triable issue of fact, summary judgment cannot be rendered. (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553 [122 P.2d 264].) ▮ If an action or defense is barred by the statute of limitations as established by affidavits which are not met by sufficient counteraffidavits, summary judgment is proper. (*Reiner* v. *Hermann,* 79 Cal.App.2d 543 [180 P.2d 385]; *Hayward Union High School Dist.* v. *Madrid,* 234 Cal.App.2d 100, 125-128 [44 Cal.Rptr. 268].) The same is true when the defense is that of res judicata. (*Dryer* v. *Dryer,* 231 Cal.App.2d 441, 446 [41 Cal.Rptr. 839], and cases cited therein.)

### The Statute of Limitations

▮ In order to escape the bar of the three-year statute of limitations in cases based on fraud (Code Civ. Proc., § 338, subd. 4), appellant contends that respondents have made no showing that appellant discovered the existence of the particular trust fund which is the subject of the litigation more than three years prior to the filing of the action or of appellant's cross-complaint. Although, as she says, the record is replete with references to her search for facts relating to the original fraud allegedly committed in 1883, there is no indication of her knowledge of the particular assets or of who held them.

The wrong which appellant contends was committed is one which, if done at all, was completed in 1883. It was then that final distribution was made of the assets and, of course, the decree was a judicial determination that what was distributed belonged to the Mark Hopkins whose estate was being administered and closed. The essence of appellant's case is that these assets had not belonged to this Mark Hopkins but some-

how had gotten into the administration of his estate, while the true owner's estate was not administered at all.

If we assume, for present purposes, that the gigantic fraud was perpetrated successfully over 80 years before the present action was commenced, and if we further assume that the fraud was extrinsic and of such nature that relief could be had upon timely complaint following discovery, nevertheless appellant cannot succeed. Her "new" or "second" theory is itself several years old. In *Universal Land Co.* v. *All Persons,* 172 Cal.App.2d 739 [342 P.2d 958], appellant presented the same allegation about the two men bearing the name "Mark Hopkins" (p. 740). Although the pleading in that case did not disclose when the alleged fraud was discovered (p. 744), it was sometime before August 10, 1959, when the opinion was filed, and therefore more than three years before the filing of appellant's cross-complaint in the present action on November 24, 1965, and before the complaint was filed on September 21, 1965.

Statutes of limitations, although commonly phrased in terms restricting only the commencement of actions, apply to causes of action raised by the defendant. (*Strong* v. *Strong,* 22 Cal.2d 540, 544 [140 P.2d 386].)

We do not accept appellant's proposition that the statute commences to run only when she learns that particular assets have derived ultimately from the estate of Mark Hopkins. In the case before us, the trustee, having notice of appellant's claims, has sought declaratory judgment by way of protection. This does not start anew the period for attacking the alleged ancient fraud. What steps appellant did take, or might have taken upon discovery of what she alleges to have discovered "recently," we need not speculate upon.* The fact is that she knew whatever she alleges now, more than three years ago. Her cross-complaint is barred.

We need not undertake a comparison of the other litigation which respondents contend establishes a res judicata or collateral estoppel.

The summary judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 9, 1968.

---

*Lydia Hopkins, the last surviving possessor of assets of the estate to be charged in the cross-complaint with concealment of the alleged fraud, died on January 8, 1965.