[S.F. No. 22914. In Bank. Jan. 23, 1973.]

LIBERTY MUTUAL INSURANCE COMPANY et al.,
Plaintiffs and Respondents, v.
EDWARD FALES, Defendant and Appellant.

## COUNSEL

Harvey M. Freed, Armando M. Menocal III and James R. Thompson for Defendant and Appellant.

L. F. Haeberle III and Donald S. Britt for Plaintiffs and Respondents.

## OPINION

MOSK, J.—Section 11580.2, subdivision (g), of the Insurance Code[1] provides that an insurer paying a claim under an uninsured motorist endorsement in an automobile insurance policy shall be entitled to be subrogated to the rights of the insured to whom such claim was paid against the person causing the injury, to the extent that payment was made. It provides further that an action against the uninsured motorist may be brought by the insurer within three years from the date the claim was paid.

Jun Maeyama was insured by Liberty Mutual Insurance Company (hereinafter Liberty) under a policy which included uninsured motorist coverage, as required by the Insurance Code. (§ 11580.2.) On February 6, 1969, Maeyama's car was involved in an accident with a vehicle driven by defendant Edward Fales. Maeyama and a passenger in his car were both injured, and his vehicle was damaged. Fales did not have insurance.

Ten months after the accident, on December 19, 1969, Liberty paid Maeyama and his passenger damages for their personal injuries, and paid Maeyama substantially all of his property damage.[2] In April 1970, 14 months after the accident, Liberty filed an action against Fales seeking

[1] All references will be to the Insurance Code unless otherwise noted.

[2] Apparently under the policy issued to Maeyama by Liberty, property damage was included under the uninsured motorist endorsement. (Cf. § 11580.2, subd. (c)(1).)

reimbursement for the amounts it had paid to Maeyama and his passenger.[3] Fales challenged the constitutionality of section 11580.2, subdivision (g), in his answer. The trial court held that the section was constitutional and rendered judgment for Liberty and Maeyama.

On appeal Fales asserts, as he did at trial, that he was precluded from seeking affirmative relief in Liberty's action because of the one-year limitation upon actions for damages for personal injuries (Code Civ. Proc., § 340, subd. 3)[4] and that subdivision (g) of section 11580.2 is unconstitutional insofar as it allows an insurer which is subrogated to the claim of its insured to file suit against an uninsured motorist three years from the time it pays the claim, whereas the uninsured motorist is precluded from obtaining affirmative relief unless he sues within one year after the accident. We need not reach the constitutional issue raised by Fales because we conclude that an uninsured motorist is not precluded from seeking affirmative relief in these circumstances.

We are met at the threshold with a problem of mootness. After Fales submitted his opening brief to the Court of Appeal, Liberty filed in the trial court a document declaring that the judgment rendered against Fales had been satisfied. Thereafter, Liberty moved to dismiss Fales' appeal as moot, and the Court of Appeal granted the motion. Admittedly, Fales did not pay the judgment, but Liberty explains that there is no realistic possibility it could collect the amount of the judgment, and therefore it was unwilling to defend the appeal. Fales insists his appeal is not moot because the constitutionality of section 11580.2, subdivision (g), is a matter of importance and insurers have avoided a judicial determination on the question for some time by devices such as those employed here.[5] Liberty argues, on the other hand, that any decision rendered by this court would be ineffective as between the parties since the record discloses a satisfied judgment.

■ If an action involves a matter of continuing public interest and

---

[3]Maeyama also joined in the action, to recover for property damage arising out of the accident. He was awarded $100 by the trial court.

[4]Ordinarily the statute of limitations will bar a cross-complaint in the same fashion as if the defendant had brought an independent action, unless the original complaint was filed before the statute of limitations on the cross-complaint had elapsed. (*Whittier* v. *Visscher* (1922) 189 Cal. 450, 456 [209 P. 23]; *Bradbury* v. *Higginson* (1914) 167 Cal. 553, 557 [140 P. 254].)

[5]In support of this assertion Fales attaches the declarations of two attorneys who represented uninsured motorists in suits filed against them by insurer-subrogees. The declarations state that the insurers in those cases similarly dismissed the actions voluntarily after the defendants on appeal challenged the constitutionality of section 11580.2, subdivision (g).

the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot. (*In re William M.* (1970) 3 Cal.3d 16, 23-24 [89 Cal.Rptr. 33, 473 P.2d 737]; *Di Giorgio Fruit Corp.* v. *Dept. of Employment* (1961) 56 Cal.2d 54, 58 [13 Cal.Rptr. 663, 362 P.2d 487]; *American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d 167, 181-182 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259].) It is evident that the question at bar involves a matter of continuing public interest. There appears to be a substantial amount of litigation touching on the issue,[6] and one writer has characterized it as being "the subject of much legal argument." (See Eisler, California Uninsured Motorist Law (1969) p. 132.) Furthermore, appellate review has been and may continue to be thwarted by the filing of a notice of satisfaction of judgment by the insurer (as occurred here) or the acquiescence by the insurer in dismissal of the action (as occurred in other cases, see fn. 5) when the validity of section 11580.2, subdivision (g), is raised. Under all the circumstances, we reject Liberty's claim that the issue presented is moot.

We turn, then, to the merits. ■ The purpose of the extended limitation period accorded to an insurer by section 11580.2, subdivision (g), is to protect the subrogation rights provided by that section. Under certain limited circumstances, the insurer's right to recover as subrogee would be barred before the right has accrued, but for that section. (See *Interinsurance Exchange* v. *Harmon* (1968) 266 Cal.App.2d 758, 762 [72 Cal.Rptr. 352].) Subdivision (i) of section 11580.2 provides that the insured, in order to recover from his own insurer under the uninsured motorist endorsement of the policy, must, within one year of the accident, either file an action against the uninsured motorist, reach agreement with the insurer as to the amount due under the policy, or institute arbitration proceedings. It may be that the award in arbitration will be made more than one year after the accident. Since the insurer's rights as subrogee under subdivision (g) do not arise until the insured's claim is paid and payment may not be made until more than a year after the accident, there is a distinct possibility that the insurer could lose its right to succeed to the insured's claim unless the statute of limitations on the insurer's cause of action as subrogee begins to run from the time it pays the claim rather than from the time the accident occurred.[7]

---

[6]Attached to Fales' petition for hearing are declarations of four attorneys stating that they are representing uninsured motorists who are being sued by insurer-subrogees in various cases in which the complaints were not filed by the insurers until between 14 and 46 months after the accident.

[7]Fales asserts that the insurer's rights as subrogee may be protected without affording it an extended statute of limitations. He relies in this connection on *Travelers*

■ Under settled principles, an insurer in its role as subrogee has no greater rights than those possessed by its insured, and its claims are subject to the same defenses. (*Iusi* v. *City Title Ins. Co.* (1963) 213 Cal.App.2d 582, 588 [28 Cal.Rptr. 893].) If Maeyama and his passenger had filed a timely action for personal injuries, Fales would have had the right to seek affirmative relief for any injuries he had suffered in the same collision.

■ Thus the determinative issue is whether the Legislature intended, by the enactment of section 11580.2, subdivision (g), to afford the insurer advantages over the uninsured motorist which its own insured did not enjoy, i.e., the power, by delayed filing, to preclude the uninsured motorist from seeking affirmative relief for personal injuries by cross-claim.

We think not. The purpose of according the insurer an extended statute of limitations is not to grant the insurer privileges greater than those of its insured or to place the uninsured motorist at a disadvantage vis-à-vis the insurer, but to render it impossible for the insurer's right of subrogation to lapse before it arises. ■ In order to effectuate this legislative intention without violating settled rules of assignment and without affording the insurer a substantial and unintended advantage over the uninsured motorist, we hold that the insurer may not rely upon the defense of the statute of limitations as to the cross-claim when its action is filed more than one year from the date of the accident. While Liberty may properly proceed against Fales pursuant to the extended statute of limitations, it may not rely upon section 340, subdivision 3 of the Code of Civil Procedure to bar Fales' right to seek affirmative relief.[8]

---

*Indemnity Co.* v. *Bell* (1963) 213 Cal.App.2d 541 [29 Cal.Rptr. 67], which was decided before section 11580.2 was amended to include a three-year statute of limitations in favor of the insurer. (Stats. 1963, ch. 1750, p. 3496.) The opinion in that case discusses (at p. 546) the tolling of the statute of limitations in certain situations involving the insured's attempt to collect its claim from the insurer under the uninsured motorist endorsement of the policy, but its holding in this regard is not directly relevant to the problem involved in the present case. There is also language in the opinion by way of dictum (at p. 549) that the insurer could have taken whatever steps were necessary to protect its claim as subrogee prior to the payment of the insured's claim under the uninsured motorist coverage. However, this statement was based upon the particular insurance contract provisions, which are not set forth in the opinion. Whatever the contract in that case may have provided, section 11580.2, subdivision (g), clearly specifies that the insurer's rights against the uninsured motorist arise only upon payment of the claim of the insured.

[8]We do not imply that an uninsured motorist who seeks affirmative relief for his personal injuries in an action brought by an insurer as subrogee more than one year after the accident may cross-complain against the insured for an amount in excess of the policy limits. The insurer, by filing the action against the uninsured motorist, is deprived only of the right to rely upon the statute of limitations as to the cross-claim. (Cf. *Western etc. Co.* v. *Tuolumne etc. Corp.* (1944) 63 Cal.App.2d 21, 31 [146 P.2d 61].)

This conclusion is not contrary to the fundamental policy underlying enactment of statutes of limitations.. ■ Such statutes are designed to promote justice by preventing the revival of hoary claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (*Telegraphers* v. *Ry. Express Agency* (1944) 321 U.S. 342, 348-349 [88 L.Ed. 788, 792, 64 S.Ct. 582].)

Here Liberty sued Fales on the basis of the very accident as to which Fales desired to seek affirmative relief. That is, Liberty's aim was to prove that Fales was negligent in the accident and Fales as a matter of defense attempted to negate such a showing and, instead, to establish that it was Maeyama who was at fault. It is difficult to rationally conclude that justice would be promoted by permitting Fales to show Maeyama's negligence for the purpose of defending against the charge that he, Fales, was the party at fault, while prohibiting him from offering the very same facts for the related purpose of recovering for his personal injuries. There is no problem here regarding the tardy revival of claims after evidence has been lost or witnesses' memories faded, since Liberty was required to prove its case on the basis of the same general facts as Fales would have utilized in his quest for affirmative relief.

Moreover, insofar as limitations statutes are designed to place an opposing party on notice within a reasonable time that a claim is pending against him, the rights of the uninsured motorist under these circumstances may be, if anything, more significant than those of the insurer. The uninsured motorist need not be informed of the negotiations between the insured and the insurer which ultimately result in the payment by the latter of the insured's damages under the policy, and may have no knowledge of any claim pending against him until an action is filed by the insurer several years after the accident. Where the damage is relatively minor, the uninsured motorist might refrain from seeking damages for his own injuries within a year of the accident upon the assumption that mutual forbearance would be a reasonable compromise of the conflicting claims arising out of the mishap and that each party would bear his own losses.

The injustice of permitting the insurer a longer limitations period than the uninsured motorist is demonstrated by the ability of the insurer to deprive the defendant of affirmative relief by the simple device of bringing suit more than a year after the accident even though the complaint could

have been filed within the year. Here, for a very clear example, Liberty paid the claims on the uninsured motorist coverage 10 months after the accident, and it could have filed suit against Fales within a year, thus enabling Fales to seek affirmative relief. Nevertheless, Liberty, whether by design or inadvertence, elected to wait until 14 months had elapsed to institute suit, as permitted by section 11580.2, subdivision (g).[9]

The parties argue the issue of constitutionality on the assumption that section 11580.2, subdivision (g), grants the insurer a longer period of limitations than the uninsured motorist enjoys. ▮ We are not required to pass upon the merits of these arguments in view of our conclusion that the Legislature did not intend by the enactment of section 11580.2, subdivision (g), to grant the insurer immunities in defense that would not have been enjoyed had the action been brought by its insured.

Although we hold that Fales had the right to seek affirmative relief by means of a cross-complaint in the trial court, he did not attempt to do so. Accordingly, no error appears.

The judgment is affirmed. In the interests of justice, appellant is to be awarded costs. (Cal. Rules of Court, rule 26(a).)

Wright, C. J., McComb, J., Tobriner, J., and Burke, J., concurred.

**SULLIVAN, J.,** Dissenting.—Defendant Fales mounts in this court, as he did in the trial court,[1] a frontal attack on section 11580.2 of the Insurance Code on federal and state constitutional grounds. Essentially he complains that the statute violates equal protection of the laws and his right of access to the courts. The focal point of the constitutional attack is the provision in section 11580.2 allowing an insurer paying a claim under an uninsured motorist endorsement "to be subrogated to the rights of the insured to whom such claim was paid against any person causing such injury or death to the extent that payment was made. Such action may be brought within three years from the date that payment was made hereunder." (§ 11580.2, subd. (g).) Fales argues that as a result insurance companies are allowed three years *from the date of their payment of the claim* to bring an action

---

[9]The section does not distinguish between those situations in which an extended statute of limitations is required to vindicate the insurer's subrogation rights and those, such as the one involved here, in which the insurer could have sued as subrogee within a year of the accident.

[1]The trial court concluded that Insurance Code section 11580.2 does not violate the equal protection clause of the Fourteenth Amendment to the United States Constitution, or article I, sections 11 and 21 or article IV, section 16 of the California Constitution.

against the person allegedly causing the injury or death while the latter, like all ordinary litigants, is allowed only *one year from the date of the accident*. In short, defendant contends that section 11580.2 discriminates in favor of insurance companies, even though, as subrogees, they merely stand in the shoes of the insured.

The majority decline to reach this constitutional issue upon the rationale that the uninsured motorist, actually facing the bar of the statute of limitations, "is not precluded from seeking affirmative relief in these circumstances." To achieve this result the majority see fit to fashion an entirely new rule of procedure that would allow a person to revive and assert by way of cross-complaint a cause of action normally barred by the statute of limitations. With all respects to my colleagues, I cannot join in such a solution of the problem at hand.

This new rule propounded by the majority not only appears to be judicially declared in the face of long-standing statutes but to be postulated without a single reference to supporting authority. As a general rule, a statute of limitations will operate to bar a cause of action pleaded as a cross-complaint to the same extent that it would have barred a complaint based on that cause. (*Strong* v. *Strong* (1943) 22 Cal.2d 540, 544-545 [140 P.2d 386]; *Eureka* v. *Gates* (1902) 137 Cal. 89, 94 [69 P. 850]; *Wells Fargo Bank* v. *Kincaid* (1968) 260 Cal.App.2d 120, 124 [66 Cal. Rptr. 832]; *Bank of America* v. *Vannini* (1956) 140 Cal.App.2d 120, 127, 133 [295 P.2d 102].) The only exception to this rule pertinent to the facts of this case is that a cross-complaint is not barred if the period of limitation has not already run on the cause of action *by the time the complaint is filed*. (*Union Sugar Co.* v. *Hollister Estate Co.* (1935) 3 Cal.2d 740, 746 [47 P.2d 273]; *Whittier* v. *Visscher* (1922) 189 Cal. 450, 456 [209 P. 23]; *McDougald* v. *Hulet* (1901) 132 Cal. 154, 161 [64 P. 278]; *Perkins* v. *West Coast Lumber Co.* (1898) 120 Cal. 27, 28 [52 P. 118]; *Goodwin* v. *Alston* (1955) 130 Cal.App.2d 664, 669 [280 P.2d 34]. See also 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 237, p. 1095; 31 Cal.Jur. 2d, Limitation of Actions, § 11, p. 440.) In other words, only the filing of the complaint serves to suspend the running of the statute. This view accords with the "general proposition that such counterclaims *must be existing at the commencement of action*." (*Union Sugar Co.* v. *Hollister Estate Co., supra,* 3 Cal.2d at p. 746; italics added.) This is also the rule adopted by a majority of courts in other states. (James, Civil Procedure (1965) § 10.17, p. 487; Annot. (1940) 127 A.L.R. 909, 910.)

In the instant case, the statute of limitations had already run on defendant's cause of action two months before plaintiff insurance company filed

its complaint. Thus, under the authority of the above decisions, the running of the statute could not be suspended. In plain fact, any cause of action which Fales had arising out of his accident with plaintiff's insured was barred. Nevertheless, ignoring the preponderance of authority holding otherwise, the majority would allow Fales to resurrect his dead claim. This result contradicts strong policies underlying statutes of limitation which are designed to promote stability in human affairs and prevent the adjudication of claims based on old and poorly preserved evidence.

The majority disregard these procedural rules in order to correct what they see as the injustice arising from a statute allowing an insurance company to wait and assert its claim against an uninsured motorist after the statute of limitations has operated to bar the latter's claim on the same transaction. But statutes of limitation are intended to vary; they reflect the legislative policy of differing the periods of limitation according to the degree of permanence of the evidence and the relative favor with which the Legislature views the type of claim or class of litigants. (See generally, Note, *Developments in the Law: Statutes of Limitations* (1950) 63 Harv. L.Rev. 1177, 1185-1186.)

Furthermore, while it may seem harsh in the instant case to bar a potential cross-complaint by the defendant, we must bear in mind that the statutes of limitation only operate against those who, through neglect or otherwise, fail to bring a timely claim. Defendant Fales does not contend that he was under any disability that precluded him from filing an action within the specified time. Instead, he emphasizes that the insurance company may assert a claim whereas he may not. In doing so, he ignores the fact that a similar result occurs in numerous cases.

For instance, in a common automobile accident, the party with a personal injury claim is expected to realize that he has one year within which to file suit and claim recovery. (Code Civ. Proc., § 340, subd. 3.) If he fails to do so, he will be unable to assert the claim as a cross-complaint against the other party who brings an action for property damages more than one but less than three years later. (See Code Civ. Proc., § 338, subd. 3.) Similarly, when a party who has a cause of action against a minor fails to assert his claim for personal injuries within one year, he cannot cross-complain if the minor, for whom the statute may be tolled (Code Civ. Proc., § 352, subd. 1), should file a suit at a later date. Each of the above examples demonstrates disparity of treatment, yet the result in each case is dictated by general policies underlying statutes of limitations.

While judicial disinclination to reach constitutional issues is understandable (*Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195

P.2d 1]), nevertheless such policy does not automatically sanctify an alternative disposition of the cause. In the instant matter, long-standing statutes of limitation and settled decisional law dictate definite results of which defendant complains on constitutional grounds. The majority decline to confront this issue. I respectfully suggest that avoidance of the constitutional issue should not be achieved by engrafting complex exceptions upon clear legislative enactments and ignoring controlling decisional law.