SCHNABEL LUMBER COMPANY,
INC., Appellant/Cross–Appellee,

v.

STATE of Alaska,
Appellee/Cross–Appellant.

No. S–2052.

Supreme Court of Alaska.

Sept. 30, 1988.
Rehearing Denied Nov. 1, 1988.

Michael L. Lessmeier, Sheldon E. Winters, Hughes, Thorsness, Gantz, Powell & Brundin, Juneau, for appellant/cross-appellee.

William G. Mellow, Asst. Atty. Gen., Juneau, Grace Berg Schaible, Atty. Gen., for appellee/cross-appellant.

OPINION

Before MATTHEWS, C.J., and RABINOWITZ, BURKE, COMPTON, and MOORE, JJ.

RABINOWITZ, Justice.

In 1981, Schnabel Lumber Company (Schnabel) entered into a contract with the state of Alaska to log state-owned land near Haines. Schnabel subcontracted logging operations to Northern Timber Company (Northern). On October 17, 1981, a bridge on the Kelsall Road (a logging road) collapsed under the weight of a CAT 235 logloader. The driver, Bill Higdon, a Northern employee, was killed in the fall; the CAT was damaged.

As a result of this accident, two lawsuits, a wrongful death action, *Higdon v. State*, and a property damage action, *Pine Top Insurance Co. v. State*, were filed against the state. In each case the state filed third party complaints against Schnabel for contractual indemnity. In its third party complaints, the state sought recovery against Schnabel on three counts: contractual indemnity for the plaintiff's recovery, breach of Schnabel's contractual obligations, and contribution from Schnabel as a joint tortfeasor.

The state subsequently settled with all plaintiffs, paying $500,000 to the plaintiffs in *Higdon* and $136,871 in the *Pine Top* case. The *Higdon* wrongful death action proceeded on the third party complaint against Schnabel. Both sides filed motions for summary judgment as to all three counts. The court granted summary judgment in favor of Schnabel on the breach of contract claim, and denied motions for summary judgment on the other counts. In its order regarding the summary judgment motions, the superior court held that, under the reasoning of *City and Borough of Juneau v. Alaska Electric Light & Power Co.*, 622 P.2d 954 (Alaska 1981), "the most reasonable interpretation of the indemnity

clause involved in the present case is that it covers all losses except *that portion of loss* which is directly attributable to the negligence of the State." (Emphasis in original.)

The indemnity clause of the timber sale contract between Schnabel and the state reads:

> The Purchaser shall indemnify the state and hold it harmless for any and all claims, demands, suits, loss, liability and expense for injury to or death of persons, and damage to or loss of property arising out of or connected with the exercise of the privileges granted the Purchaser by this contract, except for injury, damages, or loss proximately caused by negligence of the State.

The third-party action in the *Higdon* case went to trial. The jury returned a special verdict, finding the state responsible for 60% of the total negligence, Schnabel responsible for 10%, and Northern responsible for 30%. Under the court's interpretation of the indemnity clause, Schnabel was required to reimburse the state for the percentage of the settlement that was not attributable to the state's negligence ($200,000—40% of the $500,000 settlement —plus costs and attorney's fees).

Before the *Higdon* case was settled, Pine Top Insurance Co. received an estimate for repairs to the CAT. Pine Top reimbursed its insured, Schnabel,[1] for that amount ($158,400). About three weeks after the *Higdon* jury's determination that the state was 60% liable for the collapse of the Kelsall Road bridge, the state settled with Pine Top. The state paid Pine Top $136,-871, an amount it calculated by adding costs and attorney's fees to Pine Top's value of the CAT, and taking 60% of that total.

Ten days after the state settled with Pine Top, Schnabel moved for summary judgment on all three counts in the third party complaint. Schnabel argued that it was entitled to summary judgment because the state had not paid more than its share of the damage to the CAT under the indemnity clause. The state opposed Schnabel's motion and filed a cross motion for summary judgment. The state argued that under the indemnity clause Schnabel was responsible for 40% of whatever settlement amount it paid to Pine Top.[2]

The superior court granted summary judgment in favor of Schnabel on the breach of contract and contribution claims. It granted summary judgment in favor of the state for 40% of the settlement it had paid to Pine Top. Schnabel appeals from the court's decision that it must reimburse the state for 40% of the $136,871 paid to Pine Top, arguing that through its insurer it has already suffered 40% of the loss.

## DISCUSSION

At issue in this appeal is the definition of the "loss" to which the indemnity clause applies. Both sides concede that the jury's allocation of negligence in the wrongful death action is *res judicata* in the instant case. Schnabel argues that the loss should be the value of the CAT—$158,400—and that because the state paid only 60% of that loss, Schnabel is under no obligation to reimburse the state for its settlement payment to Pine Top. The state argues that, as in the *Higdon* case, the loss is the amount of money that it paid to settle the claim, and that Schnabel must reimburse it for 40% of that amount. Thus, in *Higdon* the state paid $500,000 to the plaintiff, then sought and received reimbursement for $200,000—40% of the settlement amount— from Schnabel.

---

1. Whether Schnabel or Northern was Pine Top's insured was disputed. Schnabel, however, produced documents showing that it had received the insurance payment of $158,400, that it owned the CAT, and that it held the policy with Pine Top. The state produced no conflicting evidence and the trial court noted "[t]hat Pine Top Insurance Company may have misrepresen-

ted itself in its dealings with the state . . . should not be held against Schnabel. . . ."

2. The state further argued that its negligence might be less than 60% if some of the damage to the CAT resulted from its retrieval. The superior court denied the state's request to proceed to trial on that issue because the state offered no evidence in support of its claim.

Schnabel argues that the loss at issue differs significantly from the loss in *Higdon*. In *Higdon* the loss was "an intangible claim that cannot be ascertained, the wrongful death of Bill Higdon." The present loss, however, is tangible—it is the damage to the CAT logloader, which is estimated to be $158,400. Thus, Schnabel argues, the court need not resort to the settlement amount to calculate the value of the loss as it did in *Higdon;* it can use the $158,400 repair figure.

A second distinction, Schnabel contends, is that the loss in *Higdon* was suffered by a third party, but that the loss here was suffered by a party. Because Schnabel owned the CAT, it already suffered its share of the loss. The state's payment of 60% of the CAT's value to Schnabel's insurer therefore represents its share of the total liability as determined in *Higdon.* Schnabel argues that requiring it to reimburse the state for 40% of the state's payment to the insurer, after it has suffered its 40% share of the loss of the logloader, would give a windfall to the state.

We are not persuaded that the differences which Schnabel emphasizes require the result Schnabel requests. If the *Higdon* court had applied Schnabel's method of calculating the loss to be apportioned, Schnabel would have been responsible for more than the $200,000 it paid to the state. Higdon's estate claimed more than $1,000,000 in damages, yet the court apportioned between the parties only the $500,000 actually paid by the state in settlement. Had the court identified the loss as the amount claimed by Higdon's estate, Schnabel's liability would have increased dramatically. Schnabel obviously did not encourage the *Higdon* court to employ this approach to evaluating the loss.

The superior court apportioned damages in the instant case in the same manner in which it had apportioned them in *Higdon:* it required Schnabel to reimburse the state for 40% of the amount the state paid to settle the claim. The superior court's approach is entirely consistent with the *Higdon* jury's apportionment of liability, which all parties concede is *res judicata* here, and

consistent with its prior definition of the loss to be indemnified as that amount which the state paid.

Because we see no reason to construe the term "loss" in the indemnity clause at issue in the instant case differently than in the earlier wrongful death action, we define the loss to be indemnified as the amount of money actually paid by the state in settlement of the claim. We therefore affirm the superior court's grant of summary judgment against Schnabel and its order that Schnabel reimburse the state for 40% of the amount paid in settlement of the claim.

AFFIRMED.

COMPTON, J., with whom MOORE, J., joins, dissents.

COMPTON, Justice, with whom MOORE, Justice, joins, dissenting.

The state argues, and this court agrees, that "loss" as used in the indemnity clause is equated with "the amount of money actually paid by the state in settlement of the claim." Since I believe this interpretation ignores the plain language of the indemnity clause, I dissent.

As it applies to this case, the indemnity clause reads:

> The Purchaser [Schnabel Lumber Company] shall indemnify the state and hold it harmless for any and all claims, demands, suits, loss, liability and expense, for ... damage to or loss of property ... except for damages [to property], or loss [of property] proximately caused by negligence of the state.

The obvious purpose of the clause is to protect the state from vicarious liability for the result of conduct engaged in by a purchaser of state resources. However, the clause explicitly does not protect the state from liability for the result of its own wrongful conduct. The clause allocates responsibility on the basis of the comparative negligence, if any there be, of the state and the purchaser.

Manifestly, there is no reason why the amount of property damage or loss is necessarily equal to "the amount of money

actually paid by the state in settlement of the claim." Yet that is this court's curious conclusion.

The property damaged or lost was Schnabel Lumber Company's (Schnabel) Caterpillar (Cat) 235 Log Loader. That damage amounted to $158,400. That is the amount for which suit was brought by Pine Top Insurance Company (Pine Top), Schnabel's subrogee,[1] and the amount adopted by the state in calculating the value of the damage to the Cat.[2] As all parties now agree, they are bound by the determination that 60% of the damage was proximately caused by the state's negligence. Under the indemnity clause, Schnabel is responsible for holding the state harmless for any amount over that percentage. Since the state paid not a penny more than the 60% for which it is responsible, it is entitled to nothing from Schnabel.

The state argues that it wants only to be given the same treatment in the Pine Top suit as it was in the *Higdon* suit.[3] However, significant circumstances are different.

In *Higdon*, plaintiff alleged that "damages to the estate and dependents ... amount to $1,000,000.00 or to such amount as will be proven at trial." Plaintiff prayed "1. For a judgment of $1,000,000.00 for compensatory damages caused to the estate and dependents of Bill Higdon;". The state did not accept that figure as constituting the damages to the estate and dependents. The plaintiff and the state later settled upon a figure which the state did accept as the damages to the estate and dependents. That figure was $500,000. In exchange for receipt of that sum, the entire amount of which was paid by the state, the plaintiff released the state and "all other persons, firms and corporations who might be liable" from any further liability. Damages were thus irrevocably determined. Schnabel did not contest their reasonableness.[4]

In the case now before us, Pine Top, the subrogee of Schnabel, alleged damage to the Cat in the amount of $158,400, alleged that the reasonable value of the damage to the Cat was $158,400, and prayed for judgment in the principal amount of $158,400. Ultimately the state accepted that figure as constituting the damage to the Cat. As stated by state's counsel during oral argument before the superior court: "Between myself and Mr. Hoffman [Pine Top's counsel], we reached a settlement. It was sixty percent of the appraised-value damage to the Cat." Instead of paying the entire amount to Pine Top and seeking 40% indemnity from Schnabel, the state simply paid 60% of the entire amount to Pine Top. The significant difference between this case and *Higdon* is that the loss was suffered by a party to the indemnity agreement.

It is also a significant difference that when the state arrived at a settlement in *Higdon* in January 1984, it did not know what interpretation was going to be given to the indemnity clause by the trial court. That was not determined until August 1984. More importantly, the relative re-

---

1. It is well settled law that Pine Top stands in the shoes of its subrogor, Schnabel. *Insurance Co. of N. Am. v. State Farm Mut. Auto. Ins. Co.,* 663 P.2d 953, 955 (Alaska 1983); *Liberty Mut. Ins. Co. v. Fales,* 8 Cal.3d 712, 106 Cal.Rptr. 21, 24, 505 P.2d 213, 216 (1973). The recovery sought by Pine Top was for the damage to Schnabel's property, not Pine Top's.

2. *See* Appendix A.

3. *Barbara F. Higdon, Personal Representative of the Estate of Bill Higdon v. State of Alaska,* 1 JU–82–955 Civ. In *Higdon,* the trial court ruled "Under this interpretation, Schnabel may still have to indemnify the State. It will be liable under the indemnity clause for that portion of *plaintiff's* [Higdon's] *recovery* [$500,000] which is found to be attributable to Schnabel's negli-

gence." (Emphasis added). However, in *Pine Top* the same trial court ruled "This court concludes that, in this case as well as in *Higdon,* the 'loss' which is referred to in the indemnity clause ought to be defined as *the amount actually paid out by the state.*" (Emphasis added). In my view only the first interpretation is correct. Both cannot be.

4. *See Parfait v. Jahncke Serv. Inc.,* 484 F.2d 296, 305 (5th Cir.1973), *cert. denied sub nom., Ruppel v. Travelers Indem. Co.,* 415 U.S. 957, 94 S.Ct. 1485, 39 L.Ed.2d 572 (1974); *Pan American Petroleum Corp. v. Maddux Well Serv.,* 586 P.2d 1220, 1225 (Wyo.1978); *Prociw v. Baugh Constr. Co.,* 9 Wash.App. 750, 515 P.2d 518, 522 (1973).

sponsibility of the state and Schnabel was not determined until the jury trial in March 1985.

The state's offer of settlement with Pine Top was not made until April 1985. In January 1984, the only known factor in the indemnity computation was what property had been damaged or lost. That was Schnabel's Cat. The trial court had not then interpreted the indemnification clause. The trial jury had not then allocated responsibility in terms of percentages of fault. The state had not then accepted $158,400 as the measure of damage to the Cat.

Contrary to this court's conclusion, the trial court did not apportion damages in *Pine Top* "in the same manner in which it had apportioned them in *Higdon*." The trial court's own view that it did so is patently wrong. Furthermore, contrary to this court's conclusion, it is construing the term "loss" "differently than in the earlier wrongful death action."

In my view the trial court's actual ruling in *Higdon* was correct. Applying that ruling to this case, Schnabel is liable under the indemnity clause for only that portion of its own loss which is not directly attributable to the negligence of the state. Schnabel, through its subrogee Pine Top, has paid its portion of the loss. The state is entitled to nothing.

FACSIMILE COPY

APPENDIX A

April 9, 1985

465–3603

Paul Hoffman

Robertson, Monagle, Eastaugh & Bradley

P.O. Box 1222

Juneau, AK 99802

Re:  Pinetop v. State

Dear Paul:

Mike Lessmeier was unable to give me an answer concerning the willingness of his client to settle the Pinetop claim. I have received authorization from my client to offer 60% for a full settlement following which I will seek reimbursement from Schnabel Lumber Company. I calculate the value as follows:

$158,400 — value of Cat 235 as of 11/81 plus 3.5 years of prejudgment interest
$58,212  (simple 10.5%)

$216,612

$11,506  plus attorney's fees, Civil Rule 82 (noncontested) of $1,175 for the first $10,000 and 5% of the remainder of $206,612.

$228,118
$\times$ .6

$136,871

Let me know if this offer is acceptable to your client and I will order a check.

Sincerely,
NORMAN C. GORSUCH
ATTORNEY GENERAL
By: Bill Mellow
Assistant
Attorney General

WGM:jal