Filed 8/21/15  In re Jacquelyn B. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re JACQUELYN B. et al., Persons Coming Under the Juvenile Court Law. | |
| TUOLUMNE COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>      Plaintiff and Appellant,<br><br>            v.<br><br>R.T. et al.,<br><br>      Defendants and Respondents. | F070568<br><br>(Super. Ct. Nos. JV7295, JV7296, JV7297)<br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Tuolumne County.  Donald Segerstrom, Judge.

Sarah Carrillo, County Counsel, and Christopher Schmidt, Deputy County Counsel, for Plaintiff and Appellant.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Respondent R.T.

Jacob I. Olson, under appointment by the Court of Appeal, for Defendant and Respondent C.T.

No appearance for Defendant and Respondent Robert B.

-ooOoo-

The Tuolumne County Department of Social Services (the department) appeals from orders of the juvenile court, entered at the 18-month review hearing in October 2014, extending, for six months, reunification services for R.T. (mother) and C.T. (father), the parents of three dependent children, Jacquelyn B. (born Sept. 2001), Shyanne T. (born Dec. 2006), and Shaun T. (born Aug. 2010).[1]  The department contends the juvenile court erred in finding the parents qualified for the benefit of additional reunification services under Welfare and Institutions Code section 366.22, subdivision (b).[2]  We shall dismiss the appeal as moot.

### *FACTUAL AND PROCEDURAL BACKGROUND*

In March 2013, the children were placed in protective custody due to the parents' methamphetamine use and related incarcerations.  Mother was arrested on drug-related charges on March 18, and father was arrested for a probation violation on March 20, after he tested positive for methamphetamine.  At the time of father's arrest, he and the children lived in a motel room with a pit bull, the room was a mess, and at least the two younger children were filthy.

The juvenile court subsequently detained the children and exercised its dependency jurisdiction over them.   At the dispositional hearing in May 2013, the juvenile court removed the children from parental custody and ordered the parents to comply with a dependency drug court family reunification case plan.

Mother was jailed until late July 2013.  She later spent four months in residential drug treatment but did not complete the program.  However, after she was released, mother tested clean and participated in other services included in her drug dependency court reunification services plan and her other conditions of probation.

---

[1]     C.T. is the father of the two younger children but cared for all three children.  Jacquelyn's biological father has not been part of her life and was not offered reunification services.

[2]     All statutory references are to the Welfare and Institutions Code unless otherwise specified.

2.

Father was jailed until around June 2013, after which he participated in some outpatient services. In September 2013, he entered a court-ordered residential drug treatment program and graduated in March 2014. He thereafter participated in his substance abuse group and individual counseling as well as Alcoholics Anonymous meetings. But within weeks of his release from his residential treatment program, he had multiple positive tests for alcohol.

In May 2014, the parents were arrested for possession of a firearm as a result of a probation search of the home where they were temporarily staying. The home belonged to mother's grandparents and the firearm was found in a locked cabinet. As of October 2014, the parents had entered plea agreements and were awaiting sentencing.

The parents later moved out of the grandparents' home and lived in father's truck for several weeks. By mid-August 2014, they were able to move into their own two-bedroom apartment. The apartment was clean and appropriate, albeit with limited furniture. Both parents also had jobs and father resumed testing negative for alcohol.

In the department's report for the 18-month review hearing, which was held on October 3, 2014, the department recommended that the juvenile court terminate reunification services based on the department's assessment that the parents had not demonstrated any significant changes in their behavior.

At the 18-month review hearing, after listening to father's testimony and the arguments of counsel, the juvenile court ruled as follows:

> "In comparison to, you know, where [father] was, these poor parents have come miles. They have really come far in this program. For me to say you've done all this work, and you've come all this way and you've done all these things, sorry times up, I just can't do it. I can't—I can't make that finding, because I do find that it is in the children's best interest that additional reunification services be provided.
>
> "I will find that the parents have made significant and consistent progress in a court-ordered residential substance abuse treatment program and that there is a barrier to their reunification services that was incurred by

3.

the parents both in terms of their substance abuse programs and in terms of their incarceration and—and that when they were able—when they weren't in treatment and when they were incarcerated, they were consistently and regularly contacting and visiting the children. And in my view, they really have made significant and consistent progress in the prior eighteen months.

"Now, they are not perfect. I think that this hearing has brought home, particularly to [father], the necessity that he can't slip up at all. But they both have made huge steps in resolving the problems that led to the children's removal, and I think that they both have demonstrated the capacity and ability to complete the objectives of the treatment program and that it is—there is a substantial probability that the children can be returned or will be returned to their physical custody within the extended six months. [¶] … [¶]

"I find that the children are bonded to their parents and that it is in the children's best interest. And I was particularly swayed by Jacquelyn's letter. I thought that—I thought she was well-spoken and that she was very sincere in what she was telling the Court and what she felt. And one of the things that was in there that I thought was highly relevant was watching her parents go through this process and how much they've struggled. She says, I think they have changed a lot since the beginning, and I agree with her.

"So I will make those findings as set forth. I will find that subdivision (b) of Section 366.22 does apply. I will find that the legislative intent of the section is that if the incarceration and court-ordered residential treatment program was a barrier to reunification services, that the additional six months applies. And that to read the statute as requiring that the parent be in a residential treatment program at the time of the eighteen-month [hearing] is contrary to the legislative intent. So what I read is that if they have made significant and consistent progress in a court-ordered residential treatment program and it is in their best interest to—in the best interest of the children to reunify, that's when the code section is applicable and the Court goes onto the additional findings to be made which I have made."

The juvenile court then set a 24-month review hearing for March 24, 2015.

The department subsequently filed a petition for writ of mandate, challenging the juvenile court's October 3, 2014, orders granting the parents additional reunification services. This court summarily denied the petition and the department filed the instant appeal.

4.

## *DISCUSSION*

The department contends the juvenile court erred in extending reunification services to the parents past 18 months. The department claims the parents did not qualify for the benefit of additional services under section 366.22, subdivision (b),[3] as a matter of law, because the parents neither were in a court-ordered residential substance abuse treatment program at the time of the 18-month review hearing, nor were they recently discharged from incarceration as their periods of incarceration ended in the summer of 2013. The department also challenges the sufficiency of the evidence supporting the court's factual findings. We agree with the parents' contention that the appeal should be dismissed as moot.

"As a general rule, 'an appeal presenting only abstract or academic questions is subject to dismissal as moot.'" (*In re Jody R.* (1990) 218 Cal.App.3d 1615, 1621-1622.) "A case is moot when the decision of the reviewing court 'can have no practical impact or provide the parties effectual relief.'" (*MHC Operating Limited Partnership v. City of*

---

[3]   In relevant part, section 366.22, subdivision (b) provides: "If the child is not returned to a parent … at the permanency review hearing and the court determines by clear and convincing evidence that the best interests of the child would be met by the provision of additional reunification services *to a parent … who is making significant and consistent progress in a court-ordered residential substance abuse treatment program, or a parent recently discharged from incarceration, … and making significant and consistent progress in establishing a safe home for the child's return, the court may continue the case for up to six months for a subsequent permanency review hearing* ….  The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent … and safely maintained in the home within the extended period of time .…  For the purposes of this section, in order to find a substantial probability that the child will be returned to the physical custody of his or her parent … and safely maintained in the home within the extended period of time, the court shall be required to find all of the following: [¶] (1) That the parent … has consistently and regularly contacted and visited with the child. [¶] (2) That the parent … has made significant and consistent progress in the prior 18 months in resolving problems that led to the child's removal from the home. [¶] (3) The parent … has demonstrated the capacity and ability both to complete the objectives of his or her substance abuse treatment plan as evidenced by reports from a substance abuse provider as applicable, or complete a treatment plan postdischarge from incarceration, … and to provide for the child's safety, protection, physical and emotional well-being .…" (Italics added.)

---

*San Jose* (2003) 106 Cal.App.4th 204, 214; *In re Pablo D.* (1998) 67 Cal.App.4th 759, 761.)  If the issue is one of continuing public interest and is likely to recur, a court may exercise an inherent discretion to resolve the issue even if the case is otherwise moot. (*Liberty Mut. Ins. Co. v. Fales* (1973) 8 Cal.3d 712, 715-716.)

Here, the juvenile court ordered the department to provide the parents with six additional months of reunification services and set the matter for a 24-month review hearing in March 2015.  As the parties recognize, by the time this court issues an opinion, the six months will have expired, and the department will have delivered or made available to the parents the additional services ordered by the court.  Accordingly, this court can grant no effective relief.  The department has not presented any persuasive arguments in support of its bald assertion that the issues it raises on appeal are of continuing public interest and likely to recur.  We therefore decline to address the merits of the appeal.

## *DISPOSITION*

The appeal is dismissed as moot.


_____
HILL, P.J.

WE CONCUR:


_____
KANE, J.


_____
SMITH, J.