[No. D008028. Fourth Dist., Div. One. Dec. 19, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
RAMON SANTELLANES, Defendant and Appellant.

**COUNSEL**

Winifred Chernoff, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Steven

H. Zeigan and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FROEHLICH, J.**—The superior court ordered Ramon Santellanes's probation revoked (Pen. Code,[1] § 1203.2) and sentenced him to state prison for a term of six years. Santellanes appeals the revocation of probation on statutory and due process grounds.

### I

### FACTUAL AND PROCEDURAL HISTORY

In 1986 Santellanes was charged with committing a lewd act on a child under the age of 14 in violation of section 288, subdivision (a). He pled guilty and was placed on probation for five years on the condition that, among other things, he violate no laws.

While on probation, Santellanes was arrested and charged with twice offering to sell cocaine to an undercover narcotics agent. The magistrate at the preliminary hearing for the drug charges held him to answer.

■■■■ Immediately following the preliminary hearing, the same judge, sitting as a superior court judge,[2] conducted a probation revocation hearing despite Santellanes's objection to the absence of both a probation officer and a written probation report. The court revoked probation based upon Santellanes's subsequent illegal acts.

Sentencing was delayed so that a probation report could be prepared. At the subsequent sentencing hearing two weeks later, the court acknowledged reading and considering the probation report and affirmatively considered reinstatement of probation before determining to sentence Santellanes to six years in state prison.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

[2] Santellanes had stipulated to transferring the probation revocation hearing to the magistrate conducting the preliminary hearing. We note, however, that even without this stipulation the magistrate was empowered to conduct the probation revocation hearing, acting as a superior court judge pro tem sitting pursuant to assignment. (See Order B-1185-87, dated Dec. 30, 1987, executed by the Chief Justice of California and the Chairperson of the Judicial Council, entered pursuant to powers granted under Cal. Const., art. VI, § 6; see also *People v. Najera* (1979) 88 Cal.App.3d 930, 933-934 [152 Cal.Rptr. 124].)

## II

## DISCUSSION

A. *Penal Code Section 1203.2*

■ Santellanes first contends he was denied his statutory right of having a probation report read and considered at the probation revocation hearing as required by section 1203.2, subdivision (b). However, the People contend, and we agree, that probation may be revoked under section 1203.2, subdivision (a), which does not necessarily require consideration of a report from a probation officer.[3]

Section 1203.2, subdivision (b) does require a reference to the probation officer and a reading and consideration of a probation report before revoking probation. Subdivision (a) of the same section, however, provides in pertinent part that the court may revoke probation "if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer *or otherwise* that the person has violated any of the conditions of his probation. . . ." (Italics added.) The phrase "or otherwise" has been described as referring to a showing comparable to

---

[3] Penal Code section 1203.2 provides in part as follows:

"(a) At any time during the probationary period of a person released on probation under the care of a probation officer pursuant to this chapter, any probation or peace officer may, without warrant or other process and at any time until the final disposition of the case rearrest the person and bring him before the court or the court may, in its discretion, issue a warrant for his rearrest. Upon such rearrest, or upon the issuance of a warrant for rearrest the court may revoke and terminate such probation if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation officer or otherwise that the person has violated any of the conditions of his probation, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he has been prosecuted for such offenses. However, probation shall not be revoked for failure of a person to make restitution pursuant to Section 1203.04 as a condition of probation unless the court determines that the defendant has willfully failed to pay and has the ability to pay. Restitution shall be consistent with a person's ability to pay. Such revocation, summary or otherwise, shall serve to toll the running of the probationary period.

"(b) Upon its own motion or upon the petition of the probationer, probation officer or the district attorney of the county in which the probationer is supervised, the court may modify, revoke, or terminate the probation of the probationer pursuant to this subdivision. The court shall give notice of its motion, and the probation officer or the district attorney shall give notice of his petition to the probationer, his attorney of record, and the district attorney or the probation officer, as the case may be. The probationer shall give notice of his petition to the probation officer and notice of any such motion or petition shall be given to the district attorney in all cases. The court shall refer its motion or the petition to the probation officer. After the receipt of a written report from the probation officer, the court shall read and consider the report and either its motion or the petition and may modify, revoke, or terminate the probation of the probationer upon the grounds set forth in subdivision (a) if the interests of justice so require."

or of equal solemnity with a report of a probation officer. (*In re Cook* (1944) 67 Cal.App.2d 20, 26 [153 P.2d 578].)

The evidence introduced during the preliminary hearing on the unrelated drug charges, which may be properly considered in deciding whether to revoke probation (see *People* v. *Coleman* (1975) 13 Cal.3d 867, 895-896 [120 Cal.Rptr. 384, 533 P.2d 1024]), convinced the trial judge that Santellanes had violated probation. We conclude that such evidence, which was subjected to the rules of admission and cross-examination, is at least comparable to or of equal solemnity with a hearsay probation report.[4] Santellanes's statutory rights were not violated.

## B. *Due Process*

Santellanes next contends his due process rights were violated because probation was revoked without the benefit of a current probation report, and was based solely upon the evidence introduced against him at the preliminary hearing on the drug charges.

The due process requirements pertaining to probation revocation proceedings were established generally in *Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593][5] and restated for California purposes in *People* v. *Vickers, supra,* 8 Cal.3d 451. Before probation can be finally and formally revoked written notice of the claimed violation must be given to the probationer, the evidence against him must be disclosed, he must be given an opportunity to be heard in person and to present witnesses and documentary evidence, he must be able to confront and cross-examine adverse witnesses, a neutral and detached hearing body must consider the matter, and a written statement of the fact finder must be prepared as to the evidence relied upon and the reasons for revocation. (*Id.* at p. 457.)

The question here is whether these due process requirements are served by the magistrate's utilization of evidence obtained at a preliminary hearing as the basis of probation revocation. The issue has been resolved by our Supreme Court in *In re Law* (1973) 10 Cal.3d 21, 26-28 [109 Cal.Rptr. 573, 513 P.2d 621]: ". . . [W]here the conduct which

---

[4] See *In re Thomas* (1972) 27 Cal.App.3d 31 [103 Cal.Rptr. 567], where a police report containing the statement of one eyewitness who observed the probationer commit a crime was held to be within the meaning of the phrase "or otherwise." (*Id.* at p. 35.)

[5] Although *Morrissey* dealt with a revocation of parole, and not probation, the California Supreme Court determined its holding was equally applicable in the case of a revocation of probation insofar as the demands of due process were concerned. (*People* v. *Vickers* (1972) 8 Cal.3d 451, 458 [105 Cal.Rptr. 305, 503 P.2d 1313].)

constitutes a prima facie violation of parole is also independently charged as a new felony, the procedures afforded through the holding of a preliminary hearing are inclusive of or may be made to conform to the procedures mandated in *Morrissey.* [Citation.] In such instances no purpose would be served by requiring a determination . . . that a particular act occurred which constitutes a violation of parole independently of a prior determination of the existence of probable cause of the commission of a felony grounded on the same occurrence. . . ." *(Id.* at p. 27.)

▮ Santellanes was given ample notice that the preliminary hearing on the drug charges would also serve as the preliminary hearing to determine whether there was sufficient cause to believe he had engaged in conduct in violation of his probation, justifying revocation thereof. This combined hearing provided all of the rights outlined in *Morrissey* and *Vickers* which are applicable to the initial hearing. Santellanes had adequate notice that probation revocation was to be considered during the preliminary hearing, was present at the hearing, heard the evidence against him, had ample opportunity to present witnesses and documentary evidence, was represented by counsel who was free to confront and cross-examine adverse witnesses, and was before a neutral and detached judicial officer. Finally, the court transcript of the hearing serves as the required written statement. *(People* v. *Scott* (1973) 34 Cal.App.3d 702, 708 [110 Cal.Rptr. 402].)

Since the *Morrissey/Vickers* guidelines were met, and nothing in *Morrissey* or *Vickers* suggests a probation officer's report is constitutionally mandated where the gravamen of the violation is established *without reliance on a probation report,*[6] Santellanes was not deprived of due process.

---

[6]Santellanes contends on appeal that *Morrissey* requires the trial court to consider the probation officer's report before it revokes probation, since it may contain factors in mitigation which convince the court that, notwithstanding the violation, probation should continue. However, our review of *Morrissey* does not reveal any such requirement.

Both *Morrissey* (see 408 U.S. at pp. 479-480 [33 L.Ed.2d at p. 493]) and *Vickers* (see 8 Cal.3d at pp. 459-460) recognize that there are often two stages in parole/probation revocation proceedings. The initial stage determines "guilt": did the probationer engage in the conduct which is alleged to have violated his probation? The second stage determines "disposition" or "sentencing": if he has violated probation, what is the appropriate disposition of the probationer? Where the "guilt" phase (as here) does not require reliance on the probation officer's report to establish the fact of guilt, such a report (or, for that matter, any consideration of mitigating factors unconnected to "guilt" of the charged conduct) is irrelevant to the preliminary determination of whether to initially revoke parole. However, the sentencing phase appropriately includes consideration of the parole officer's report, along with any evidence or arguments in mitigation or explanation as the defendant may appropriately submit. While *Morrissey* acknowledged a parolee has a right to a hearing (with concomitant due process protections) before a *final* disposition of his status is made, nothing in *Morrissey* suggests the court must consider "sentencing" data during the "guilt" phase.

Here, defendant had the opportunity to present relevant evidence and argument at each stage: during the preliminary hearing, to challenge the *fact* of a violation; and during sentencing, *to present evidence and argument (including the probation officer's report) supporting*

Moreover, we note a probation report was obtained and reviewed in conjunction with the subsequent hearing on the appropriate *sentencing* of Santellanes.[7] The court, before pronouncing sentence, acknowledged reading the report and that Santellanes had done well on probation. At this point it was still within the court's discretion to reinstate probation.[8] But regardless of Santellanes's fine performance on probation, he was clearly in violation of probation, and the obvious seriousness of his subsequent crimes appropriately weighed heavily on the court's decision to deny probation.

■    Accordingly, we conclude a probation officer's report is not a prerequisite to revocation of probation, where revocation is based on a violation established by independent evidence, as long as a probation report is obtained, read and considered at the subsequent sentencing hearing during which reinstatement of probation is considered.

### III

### DISPOSITION

The judgment is affirmed.

Wiener, Acting P. J., and Nares, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 29, 1990.

reinstatement of probation. Accordingly, defendant was accorded the *Morrissey/Vickers* due process protections at each stage before final judgment was entered.

[7] We also reject Santellanes's complaint that he was not given an opportunity to confront and cross-examine the probation officer who prepared the report. *Morrissey* specifically guarantees the right to confront *adverse* witnesses (408 U.S. at p. 489 [33 L.Ed.2d at p. 499]); and, as the instant case illustrates, a probation officer is not necessarily an adverse witness. (*People v. Calais* (1974) 37 Cal.App.3d 898, 903 [112 Cal.Rptr. 685].) The probation officer recommended Santellanes receive *no* prison time and that probation be *reinstated* with the original conditions, plus one year in county jail. The probation officer's recommendation, considering the serious nature of the crimes involved, was favorable rather than adverse. Santellanes's due process rights were not infringed by his inability to cross-examine such a favorable witness.

[8] Prior to sentencing, the court stated: ". . . I know of no statutory provisions which would limit or prohibit the grant[ing] of probation in this case."