92 Cal.Rptr.2d 662 (2000)
78 Cal.App.4th 202
The PEOPLE, Plaintiff and Respondent,
v.
George BOURQUIN, Defendant and Appellant.
No. D032477.
Court of Appeal, Fourth District, Division One.
February 10, 2000.
Rehearing Granted March 13, 2000.
*663 Cheryl A. Geyerman, under appointment by the Court of Appeal, San Diego, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Laura Whitcomb Halgren and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.
BENKE, Acting P.J.
George Bourquin appeals following revocation of his probation, asserting the testimony of a police officer at a combined preliminary/probation revocation hearing was insufficient because the hearsay declarations of his wife, there admitted against him, violated his right of confrontation. As Bourquin later admitted in a guilty plea to have violated his probation, we find that all of the questions on the propriety of Bourquin's probation revocation have necessarily been rendered moot, and thus we order the appeal dismissed.

PROCEDURE
By felony complaint dated May 8, 1997, the District Attorney of San Diego County accused Bourquin in superior court case number SF115263 of making a terrorist threat against his wife,[1] Margaret,[2] in violation of Penal Code section 422.[3] On May 16, Bourquin pleaded guilty to the charged offense on the condition that his sentence be concurrent with his then-existing probation violations. On June 16, imposition of sentence was suspended, and Bourquin was placed on probation.
On September 22, 1998, after a felony complaint was filed against him in People v. Bourquin (Super. Ct. San Diego County, 1998, No. SF130713), an evidentiary probation revocation hearing in this case was set for September 23, to trail the new case.[4] *664 The matter was thereafter reset for October 2, and then October 7. On that day, the court found, based on the evidence presented at the preliminary hearing in case number SF130713, that Bourquin had violated his probation by failing to remain law-abiding, it formally revoked Bourquin's probation and imposed the upper term of three years in state prison for the earlier offense.
On November 9, 1998, counsel for Bourquin filed a notice of appeal in this case, checking a box in the form that states the appeal is one taken "AFTER PROBATION REVOCATION BASED ON ADMISSION."[5]
A certificate of probable cause was also requested "to questions [sic] the court's decision to violate [Bourquin] after a hearing where only the police officer testified providing Prop. 115 testimony...." (No certificate of probable cause is included in the record.)
At some point not noted in the record, Bourquin entered a guilty plea to the misdemeanor offense of disturbing the peace as a lesser included offense in case number SF130713. Bourquin received a 111-day sentence on the new offense, to be served concurrently with the 3-year state prison commitment imposed due to the probation revocation.

FACTS[6]
On September 16, 1998, Officer Cynthia Isabelle, a 13-year veteran, went to an apartment in Chula Vista in response to a report of domestic violence.[7] When she arrived, both Bourquin and Margaret were there. Officer Isabelle noticed that while Margaret was telling another officer she had injured herself when she fell on her back, she was at the same time shaking her head from side to side in a "no" gesture. Officer Isabelle also noted that Margaret had a wide variety of injuries upon her body in many different stages of healing, most of which were inconsistent with Margaret's statement that she had fallen on her back. Officer Isabelle had Bourquin taken outside, and she then spoke to Margaret about her injuries.
Margaret told Officer Isabelle that Bourquin had caused her injuries by hitting her, because he had a bad temper. Later, at the hospital, Margaret again denied Bourquin had hit her. When Officer Isabelle asked Margaret why she told her son that Bourquin had been hitting her, Margaret answered she did not know why she had made such a statement.
While conceding the evidence constituted probable cause for the new felony *665 charge, trial counsel argued it was nonetheless insufficient, in that Margaret's conflicting statements raised doubt as to the truth of the matter to find Bourquin guilty of a violation of probation by a preponderance of the evidence.
The judge found (after first referring to the pattern instruction defining the burden of proof), based upon the independent observations of Officer Isabelle as to Margaret's many injuries of varying ages, and also on Margaret's inability to explain why she told her son Bourquin had been hitting her again, that the evidentiary standard for a probation revocation was met, because, considering the totality of the evidence, a preponderance demonstrated that Bourquin had not remained law-abiding, as was required of him by his probation conditions.
Bourquin's probation then was formally revoked, and he was sentenced to state prison for a term of three years.

STANDARD OF REVIEW
As this court has noted, "a formal probation revocation hearing is substantially different from a criminal prosecution.... `... Its purpose is not to determine guilt or innocence but is whether conditions attached to an act of clemency have been met.'" (People v. Clark (1996) 51 Cal.App.4th 575, 582-583, 59 Cal. Rptr.2d 234.)[8]
The standard of proof required for finding that a probation violation has occurred is a simple preponderance of the evidence. (People v. Rodriguez (1990) 51 Cal.3d 437, 447, 272 Cal.Rptr. 613, 795 P.2d 783.) The distinction in the level of certainty that is required to support probation revocation, as opposed to a criminal conviction, is crucial:
"[S]ection 1203.2, subdivision (a) allows for a revocation of probation `if the interests of justice so require and the court, in its judgment, has reason to believe ... that the [probationer] has violated any of the conditions of ... probation, ... or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses.' (Italics added.) Because the commission of a new offense or disobedience of a condition of probation is expressly made grounds for revocation regardless of prosecution, the statute authorizes revocation of probation based upon a criminal offense that cannot be prosecuted for lack of proof. [Citations.]" (People v. McGavock (1999) 69 Cal.App.4th 332, 338-339, 81 Cal.Rptr.2d 600.)

DISCUSSION
In this case, the evidence relied upon was received at Bourquin's preliminary hearing (see fn. 4, ante) on new charges involving his longtime pattern of domestic violence inflicted against his wife. Bourquin's wife did not testify at that hearing, but evidence of her statement naming Bourquin as the perpetrator was received from a police officer pursuant to the provisions of section 872, subdivision (b).[9]
*666 As at trial, Bourquin argues that while such testimony may provide probable cause, it is insufficiently trustworthy as a matter of law to meet the requisite preponderance of the evidence standard required for probation revocation, and impermissibly infringes upon Bourquin's right of confrontation,[10] as it applies in those proceedings.[11] The contention is a novel and interesting one, but we may not pursue it.
While Arreola explicitly sanctioned dual preliminary/parole revocation hearings, it also noted that, even where the evidence supporting revocation was impermissible hearsay, any questions as to the propriety of the parole revocation were rendered moot by a subsequent conviction of the offense originating the revocation. (People v. Arreola, supra, 7 Cal.4th at pp. 1161-1162, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
"[Although at the time of the revocation hearing the alleged probation violation ... was not supported by evidence properly admitted at the hearing, defendant's subsequent conviction of that offense now validly establishes that particular violation of probation, and has rendered the error harmless.
"Defendant, in seeking to challenge the revocation of his probation, is barred from relitigating the issue of his latest commission of the offense.... `[A] parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime.' [Citation.]
"....
"Thus, affording defendant a new probation revocation hearing would be a futile act because, on remand, the trial court would have before it defendant's conviction of the offense whose circumstances formed the basis for that court's previous action revoking probationa conviction *667 that presently, in itself, would support a proper revocation of probation. [Citation.]" (People v. Arreola, supra, 7 Cal.4th at pp. 1161-1162, 31 Cal.Rptr.2d 631, 875 P.2d 736, fn. omitted.)
Counsel for Bourquin attempts to distinguish Arreola on the ground that there the defendant pleaded guilty to the charged offense, while in this case Bourquin's guilty plea was to a less serious offense than those charged or those for which he was on probation. The attempt is unavailing. As earlier noted, the judge who heard the probation revocation found only that Bourquin had failed to remain law-abiding, not that he had committed a specific new felony, and revoked probation for the more general reason. Bourquin's subsequent plea to a misdemeanor, rather than to a new domestic violence felony, does nothing to vitiate his necessary admission that he had violated the terms of his probation by failing to remain law-abiding.[12]
The procedural posture of this matter, following Bourquin's plea of guilty to a new offense, is precisely that which would have been obtained had Bourquin admitted, rather than contested, the allegation of having violated probation. In such cases no appeal may be maintained because, as section 1237.5 provides in relevant part:
"No appeal shall be taken by the defendant from a judgment of conviction upon a plea of guilty or nolo contendere, or a revocation of probation following an admission of violation, except where both of the following are met: [¶] (a) The defendant has filed with the trial court a written statement, executed under oath or penalty of perjury showing reasonable constitutional, jurisdictional, or other grounds going to the legality of the proceedings. [¶] (b) The trial court has executed and filed a certificate of probable cause for such appeal with the county clerk."[13]
Trial counsel may well have recognized this problem when he filed the notice of appeal because the particular form used was, as earlier noted, that applicable "following an admission of violation," i.e., a notice filed pursuant to section 1237.5.
In the present circumstances, despite the fact the issue now sought to be raised was litigated below, our present provision of appellate review to what has become an abstract matter (whether there was adequate evidence that Bourquin had failed to remain law-abiding) would run squarely contrary to a readily discernible legislative intent:
"In enacting section 1237.5, the Legislature evidently sought to promote judicial economy in the appellate system as a *668 whole, for it established a mechanism that did not invite consideration of the peculiar facts of the individual appeal. The provision lays down a `condition precedent' to the taking of an appeal within its scope. [Citation.] It is a general `legislative command' to defendants. [Citation.] It is not an authorization for `ad hoc dispensations' from such a command by courts. [Citation.] Indeed, it effectively precludes dispensations of this sort, which are `squarely contrary' to its terms [citations]." (People v. Mendez, supra, 19 Cal.4th at p. 1098, 81 Cal.Rptr.2d 301, 969 P.2d 146.)
Presented with a novel question that is of continuing public interest and likely to recur, we might well reach its merits despite an intervening event rendering the particular case moot. "If an action involves a matter of continuing public interest and the issue is likely to recur, a court may exercise an inherent discretion to resolve that issue, even though an event occurring during its pendency would normally render the matter moot." (Liberty Mut. Ins. Co. v. Fales (1973) 8 Cal.3d 712, 715-716, 106 Cal.Rptr. 21, 505 P.2d 213, quoted in Morehart v. County of Santa Barbara (1994) 7 Cal.4th 725, 746-747, 29 Cal.Rptr.2d 804, 872 P.2d 143; see also In re Taya C. (1991) 2 Cal.App.4th 1, 6, 2 Cal.Rptr.2d 810.)
However, two considerations weigh against our entertaining the question presented. First, while subsequent convictions (by plea or otherwise) may render many parole revocation challenges moot, in a significant number of cases the revocation alone will end the proceedings and an appeal therefrom will properly lie. Second, the policies favoring dismissal of the appeal are derived from principles generally applicable to civil cases, and such policies cannot outweigh the Legislature's expressed purpose of stringently limiting the circumstances in which an appeal may be taken after a probation revocation that is based on an admitted violation of the conditions of probation.
Thus, in light of the strong legislative policy intended to preclude "dispensations" for appellate review in cases following an admission of guilt, or an admission of having violated the conditions of one's probation, and because the appeal seeks to question the validity of a finding Bourquin later admitted, we must decline to undertake review of Bourquin's challenges to the revocation of his probation, as these matters have been rendered moot by Bourquin's subsequent plea of guilty.

DISPOSITION
The appeal from the judgment (order revoking probation) is dismissed as moot.
HUFFMAN, J., and HALLER, J., concur.
NOTES
[1] At the time Bourquin made the terrorist threat against his wife in 1997, he was on probation for previous terrorist threats against her. (Bourquin had over a dozen prior convictions and had served prison terms in New York and Florida.)
[2] We refer to Bourquin's wife by her first name for purposes of clarity and not out of disrespect.
[3] All statutory references are to the Penal Code.
[4] "As a means of avoiding needless duplication and promoting judicial economy, in some instances the preliminary hearing on the charges that give rise to the probation revocation proceeding may be coordinated with the final revocation hearing, in a single proceeding. [Citation.] Either pursuant to an existing blanket cross-assignment to the municipal court, or a specific assignment in a particular case [citation], it sometimes will be possible for a superior court judge to act as a magistrate in conducting a preliminary hearing in the municipal court while conducting concurrently a probation revocation hearing. In this coordinated proceeding, the decision maker charged with the determination whether to revoke probation necessarily would observe the demeanor of those witnesses who testify for purposes of the preliminary hearing, thereby satisfying that component of a defendant's constitutional right of confrontation, rather than attempt to assess credibility from a cold record or defer to the other judge's assessment of the witnesses' credibility." (People v. Arreola (1994) 7 Cal.4th 1144, 1159, 31 Cal.Rptr.2d 631, 875 P.2d 736 [hereinafter Arreola].)
[5] That is, the appeal would require adherence to the procedures set out in section 1237.5, generally precluding an appeal after a plea of guilty or an admission of probation violation unless a certificate of probable cause is issued. (See discussion, post.) Appellate counsel disputes such characterization of the appeal, maintaining the appeal is from a judgment after a contested probation revocation hearing, and thus proper under section 1237.
[6] As the new domestic violence offense was later resolved by a guilty plea, the facts concerning that offense, by reason of which Bourquin's probation on the earlier offense was revoked, are taken from the transcript of the preliminary hearing.
[7] It appears Margaret told her son Bourquin was hitting her again, and he called police. Margaret was under the influence of medications when Officer Isabelle arrived.
[8] We recognize the procedural analysis, if not the decisional basis, of People v. Clark, supra, was criticized by the Supreme Court in People v. Mendez (1999) 19 Cal.4th 1084, 1098, footnote 7, 81 Cal.Rptr.2d 301, 969 P.2d 146.
[9] Section 872, subdivision (b) provides in part: "Notwithstanding Section 1200 of the Evidence Code [the hearsay rule], [a] finding of probable cause may be based in whole or part upon the sworn testimony of a [specially qualified] law enforcement officer relating the statements of declarants made out of court offered for the truth of the matter asserted." Section 872, subdivision (b) was added in June of 1990 by Proposition 115, an initiative entitled "Crime Victims Justice Reform Act" also adding article I, section 30, to the California Constitution. In Whitman v. Superior Court (1991) 54 Cal.3d 1063, 1075-1082, 2 Cal.Rptr.2d 160, 820 P.2d 262, the Supreme Court upheld the constitutionality of Proposition 115, finding no violation of the defendant's state or federal constitutional rights to confront witnesses against him.
[10] In discussing those circumstances which would allow hearsay evidence to support parole revocation, the Arreola court held: "Thus, in determining the admissibility of the evidence on a case-by-case basis, the showing of good cause that has been made must be considered together with other circumstances relevant to the issue, including the purpose for which the evidence is offered (e.g., as substantive evidence of an alleged probation violation, rather than, for example, simply a reference to the defendant's character); the significance of the particular evidence to a factual determination relevant to a finding of violation of probation; and whether other admissible evidence, including, for example, any admissions made by the probationer, corroborates the former testimony, or whether, instead, the former testimony constitutes the sole evidence establishing a violation of probation. Several federal circuit courts have adopted a similar approach, balancing the defendant's need for confrontation against the prosecution's showing of good cause for dispensing with confrontation. [Citations.]" (People v. Arreola, supra, 7 Cal.4th at p. 1160, 31 Cal.Rptr.2d 631, 875 P.2d 736.)
[11] Bourquin also raises due process/notice objections to the revocation but these are without foundation: "The record here reveals that at the time his probation was revoked appellant was in court with counsel, [and] was given the opportunity to address the . . . issue.... Nothing in the record suggests that appellant or defense counsel was precluded from objecting to the [revocation] or was in any way denied a meaningful opportunity to . . . question the court's reasons for [revocation].... Consequently, procedural due process'a meaningful opportunity to object' was provided." (People v. Zuniga (1996) 46 Cal.App.4th 81, 84, 53 Cal.Rptr.2d 557.)

Appellate counsel also argues that Bourquin did not receive proper notice of the revocation proceedings. As the record here reveals Bourquin was in court on September 23, 1998, when his probation was summarily revoked and the evidentiary hearing set for October 2, and was also in court on that day when the matter was continued to October 7, counsel's lack of notice argument is without foundation in the record.
Finally, erroneously citing to section 1203.2, subdivision (b), rather than subdivision (a), counsel argues a new probation report was required before revoking Bourquin's probation. We have previously rejected this argument in People v. Santellanes (1989) 216 Cal.App.3d 998, 1002-1003, 265 Cal.Rptr. 281. Further, no objection was made below on these grounds and, also for this reason, Bourquin's extensive discussion of this issue is unpersuasive.
[12] Appellate counsel refers to trial counsel's representation of Bourquin as "weak," presumably because trial counsel allowed Bourquin to enter a guilty plea instead of going to trial. The determination to plead to a lower grade misdemeanor, rather than face exposure to a new felony conviction on which a consecutive felony sentence might have been imposed, will not now be faulted by us in an exercise of appellate hindsight.
[13] We recognize that an exacting focus on the language of section 1237.5 might find it inapplicable here because revocation preceded, rather than followed, a new conviction of a crime. We also recognize that "[i]n determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: `the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.]" (People v. Panizzon (1996) 13 Cal.4th 68, 76, 51 Cal.Rptr.2d 851, 913 P.2d 1061.) Here Bourquin challenges a revocation he later admitted in his guilty plea, and the policies sought to be advanced by section 1237.5, if not its precise words, are thus relevant to our resolution of the issues herein. "Section 1237.5 has as its purpose `to promote judicial economy' [citation] `by screening out wholly frivolous ... [admission of probation revocation] ... appeals before time and money are spent' on such matters as the preparation of the record on appeal [citation], the appointment of appellate counsel [citation], and, of course, consideration and decision of the appeal itself." (People v. Mendez, supra, 19 Cal.4th at p. 1095, 81 Cal. Rptr.2d 301, 969 P.2d 146, italics added.)