Filed 8/5/25  P. v. Daniels CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JAMES DANIELS,<br><br>        Defendant and Appellant. | H050978<br>(Santa Clara County<br>Super. Ct. No. C2012329) |

After a preliminary examination on new charges, the trial court found appellant James Daniels had violated the terms and conditions of the grant of probation in the instant case.  The trial court therefore revoked probation and sentenced Daniels.  Daniels argues he was denied due process because the petition for modification of terms of probation did not include the charges that were ultimately relied on by the trial court to find a violation of probation and therefore Daniels did not receive adequate notice.  We conclude Daniels forfeited this issue because his defense counsel in the trial court did not object on this basis, and we also conclude the lack of objection did not constitute ineffective assistance of counsel because Daniels did, in fact, receive sufficient notice, so the record does not affirmatively exclude a rational basis for his attorney's decision.  Accordingly, we affirm.

# I. BACKGROUND

We take the facts of the underlying offense from the petition for modification of terms of probation, as do the parties. "On May 23, 2020, San Jose Police Officers were flagged down at the 7-11 located on 617 Blossom Hill Road, due to [a] report of an assault. The victim exited the store and was attacked by 4 suspects. The victim fell to the ground and was kicked in the head multiple times by all of the suspects and lost consciousness. While unconscious, one of the suspects reached into the victim's pocket and took unknown items. The suspects got into a vehicle and fled the scene." After reviewing security footage of the incident, officers were able to identify the suspects and, in September 2020, the Covert Response Unit began conducting surveillance on Daniels. On September 17, 2020, officers took custody of Daniels and conducted a search of his residence and vehicle, finding several weapons and ammunition.

On September 21, 2020, the District Attorney filed a felony complaint against Daniels setting forth the following charges: (1) assault by means of force likely to produce great bodily injury (Penal Code, § 245, subd. (a)(4); count 1);[1] (2) robbery in the second degree (§ 212.5, subd. (c); count 2); (3) possession of a firearm by a former juvenile offender (§ 29820, subd. (b); count 3); (4) possession of a firearm by a former juvenile offender (§ 29820, subd. (b); count 4); (5) possession of a firearm by a former juvenile offender (§ 29820, subd. (b); count 5); (6) carrying a loaded firearm on the person or in a vehicle – defendant not registered owner in violation of section 11106 (§ 25850, subd. (a); count 6); (7) possession of ammunition by prohibited person (§ 30305, subd. (a)(1); count 7). Count 1 included a great bodily injury enhancement (§ 12022.7, subd. (a)), and counts 1 and 3 through 7 included gang enhancements (§ 186.22, subd. (b)(1)(A) and (C)).

---

[1] Subsequent undesignated statutory references are to the Penal Code.

On October 27, 2021, Daniels pleaded no contest to counts 1 and 6. He admitted the great bodily injury enhancement attendant to count 1. The maximum sentence for the charges was seven years and eight months, but the imposition of sentence was suspended and the trial court placed Daniels on three years of probation.

In April 2022, the probation department submitted a petition for modification of terms of probation. The petition stated the basis for the violation was an arrest by the Alameda County Sheriff's Office of Daniels on February 12, 2022, for violations of Penal Code sections 25400, subdivision (a)(1), 25850, subdivision (a), 29800, subdivision (a)(1), 25400, subdivision (c)(6), and 245, subdivision (a)(4).

On June 7, 2022, the probation department issued a memorandum that stated San Jose police had arrested Daniels for violations of Health and Safety Code sections 11351 and 11352, subdivision (a). The memorandum stated that these were "[c]ircumstances for violation of probation which not yet arraigned" and that Daniels was due to be arraigned for the new law violation on June 2, 2022.

In a July 11, 2022, written motion for release from custody pending the probation violation hearing, Daniels acknowledged receipt of the supplemental memorandum which included "further" allegations that Daniels had been charged with a new case (C2206621) based on an arrest in Santa Clara County for possession for sale of fentanyl, and transportation, sale, or distribution of fentanyl. In his motion for release, Daniels acknowledged he had received the police report for the new charges, and he included a recitation of the facts upon which the new case and alleged violation of probation was based. The motion concluded by noting that, in connection with the conduct alleged as the basis for the probation violation, two separate courts had determined Daniels was safe for pretrial release.

The court held a bail hearing on July 19, 2022. In arguing for release on his own recognizance pending an evidentiary hearing on the probation revocation allegations, Daniels argued that "the offenses for which he is now before this court are non[-]violent

3

cases. Both judges, both in Alabama [*sic* Alameda] and Santa Clara County, not only deemed him safe to release, they released him with no conditions, minimal O.R. conditions." In their oral opposition, the prosecution noted the facts of both the Alameda arrest as well as the new Santa Clara case, C2206621. In response, Daniels again referred to the underlying facts in case C2206621, contending they did not support detention: "[w]hether or not he should be punished is for -- should be left to after this case is adjudicated, and whether these violations are, in fact, found to be true."

At the preliminary hearing for case C2206621 on August 10, 2022, the trial court noted that the matter was also set for a probation violation hearing at the same time for both the underlying charges in case C2206621 as well as an arrest in Alameda. In that context, defense counsel objected with regard to testimony from Alameda County. Counsel objected on two grounds: (1) a lack of discovery for the Alameda case, including the body-worn cameras; and (2) an issue regarding whether pills found on Daniels in the Alameda County case were oxycodone, or fentanyl like in the second Santa Clara County case. The court agreed with defense counsel's due process argument and did not allow the Alameda evidence.

Officer Serleny Soto testified as to the facts underlying the fentanyl charges and arrest. Soto testified that early in the morning on May 28, 2022, she was driving on Monterey Road in San Jose when she observed a black Mercedes with an expired license plate. After stopping the car and waiting for additional officers to arrive, Soto removed the person, Daniels, from the vehicle. Soto asked for and obtained consent to search Daniels's vehicle, in which she found a small plastic bag containing pills. A fellow officer used the drugs.com app to confirm that the pills were fentanyl. There were approximately 47 pills.

Sitting as a magistrate, the trial court found sufficient evidence that Daniels had committed violations of Health and Safety Code sections 11351 and 11352, subdivision (a) for possession for sale or purchase for sale of a controlled substance, and

4

transportation, sale, and distribution of a controlled substance and bound Daniels over for trial. Based upon the sufficiency of evidence presented, the court sustained the allegation that Daniels had violated the terms of probation. Defense counsel did not object to the court's reliance on these charges to support the probation violation finding.[2]

On March 30, 2023, the trial court conducted a sentencing hearing based on the violation of probation. Before doing so, the court asked defense counsel if he had informed Daniels of his constitutional rights in connection with the admission of violations of probation, whether Daniels understood those rights, and whether Daniels waived those rights. Daniels's counsel answered in the affirmative as to all three questions. The court also asked Daniels directly whether he understood the circumstances regarding the violation of probation and Daniels responded that he did. The court asked defense counsel whether "any of [Daniels's] constitutional rights [would] be affected by his admission to something he still is standing trial for" and defense counsel stated that "the Court's finding is sufficient" and "the only thing the Court has to do is to sentence him."

The court sentenced Daniels to a term of two years on count 1, and 16 months on count 6, to run concurrently. The sentence was deemed served due to the application of credits and he was released from custody on the probation revocation and ordered to report to parole within 48 hours.

Daniels timely appealed.

## II.    DISCUSSION

### A.    *Legal Principles*

"In conducting a probation revocation hearing, a trial court exercises its discretion to 'revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or

---

[2] Daniels was in custody in the instant case, but remained out of custody on supervised own recognizance (SORP) in the pending felony case, C2206621.

parole officer or otherwise that the person has violated any of the conditions of their supervision, or has subsequently committed other offenses, regardless of whether the person has been prosecuted for those offenses.' (Pen. Code, § 1203.2, subd. (a).) The facts supporting a probation revocation must be proved by a preponderance of the evidence. [Citation.]" (*People v. Gray* (2023) 15 Cal.5th 152, 163.)

On appeal, "[w]e review the trial court's probation revocation order for an abuse of discretion. [Citations.] The trial court's factual findings are reviewed for substantial evidence. [Citations.]" (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.)

In *Morrissey v. Brewer* (1972) 408 U.S. 471 (*Morrissey*), the U.S. Supreme Court discussed the due process requirements for revocation of parole, ultimately setting forth what it considered to be the minimum requirements. The California Supreme Court later adopted these requirements in the context of probation revocation, noting that "[t]he minimum requirements of due process at the revocation hearing were stated in *Morrissey* to be: '(a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement of the factfinders as to the evidence relied on and reasons for revoking parole." (*People v. Vickers* (1972) 8 Cal.3d 451, 457 (*Vickers*).) In 2017, the California Supreme Court affirmed these minimum due process requirements. (*People v. DeLeon* (2017) 3 Cal.5th 640, 654.)

When originally setting forth these due process requirements, the *Vickers* Court acknowledged that although parole and probation are not identical, "*Morrissey* is . . . equally applicable in the case of a revocation of probation insofar as it assures that revocation can be had only with due process protections. However, the precise nature of

6

the proceedings for such revocation need not be identical if they assure equivalent due process safeguards." (*Vickers, supra,* 8 Cal. 3d at p. 458.) Therefore, in the context of probation revocation, "some flexibility in the manner in which due process guarantees are met is acceptable." (*People v. Felix* (1986) 178 Cal.App.3d 1168, 1171.)

**B.      *Forfeiture***

As a general matter, failure to object to a purported error in the trial court results in forfeiture of the claim. (See *People v. Abilez* (2007) 41 Cal.4th 472, 521.) Moreover, failure to object to inadequate notice at a probation revocation hearing waives appellate review. (*People v. Hawkins* (1975) 44 Cal.App.3d 958, 967 (*Hawkins*).) Daniels argues that, although his defense counsel in the trial court did not object to the fact that the petition for modification of terms of probation did not include the controlled substance charges that resulted in revocation of probation, this court can still reach the issue. Daniels makes four arguments in this regard: (1) when an appellant's claim implicates a court's subject-matter jurisdiction, it can be raised at any time; (2) when an appellant's claim implicates a fundamental constitutional right, it may not be waived or forfeited; (3) the claim is cognizable as a pure question of law because it is undisputed that Daniels's probation was revoked based on an arrest that was not alleged in the petition; and (4) the court can exercise its discretion to reach the merits of the claim to forestall a habeas petition based on defense counsel's failure to object. We reject each of these contentions.

With regard to the first argument, Daniels does not establish that the trial court did not have subject-matter jurisdiction; he appears to confuse subject-matter jurisdiction with an act in excess of jurisdiction. " 'Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.]" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660.) The term "lack of jurisdiction" "may also 'be applied to a case where, though the court has jurisdiction over the subject

7

matter and the parties in the fundamental sense, it has no "jurisdiction" (or power) to act except in a particular manner, or to give certain kinds of relief, or to act without the occurrence of certain procedural prerequisites.' [Citation.] ' "[W]hen a statute authorizes [a] prescribed procedure, and the court acts contrary to the authority thus conferred, it has exceeded its jurisdiction." ' [Citation.]" (*Id*. at p. 661.) "Whereas a lack of fundamental jurisdiction may be raised at any time, a challenge to a ruling in excess of jurisdiction is subject to forfeiture if not timely asserted. [Citation.]" (*People v. Ramirez* (2008) 159 Cal.App.4th 1412, 1422.) Daniels cites no authority demonstrating that lack of notice in connection with a probation revocation hearing deprives the trial court of subject-matter jurisdiction.[3]

Daniels's second argument also lacks merit. Even when a claim implicates a constitutional right, "constitutional objections must be interposed in order to preserve such contentions on appeal." (*In re Josue S.* (1999) 72 Cal.App.4th 168, 170.) This fundamental principle has been explained by the California Supreme Court: " ' "An appellate court will ordinarily not consider procedural defects or erroneous rulings, in connection with relief sought or defenses asserted, where an objection could have been, but was not, presented to the lower court by some appropriate method .... The circumstances may involve such intentional acts or acquiescence as to be appropriately classified under the headings of estoppel or waiver .... Often, however, the explanation is simply that it is *unfair to the trial judge and to the adverse party* to take advantage of an error on appeal when it could easily have been corrected at the trial." ' [Citation.] ' "The purpose of the general doctrine of waiver is to encourage a defendant to bring errors to the attention of the trial court, so that they may be corrected or avoided and a fair trial

---

[3] We note that one of the cases cited by Daniels actually undermines his argument, stating: "When, as here, the court has jurisdiction of the subject, a party who seeks or consents to action beyond the court's power as defined by statute or decisional rule may be estopped to complain of the ensuing action in excess of jurisdiction. [Citations.]" (*In re Griffin* (1967) 67 Cal.2d 343, 347-348.)

had ...." ' [Citation.] ' "No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." [Citation.]' [Citation.]." (*People v. Saunders* (1993) 5 Cal.4th 580, 589-590, fn. omitted.)

Daniels's third argument is that the claim is cognizable as a pure question of law because it is undisputed that Daniels's probation was revoked based on an arrest that was not alleged in the petition. To support his position, Daniels cites *People v. Yeoman* (2003) 31 Cal.4th 93, 118, where the California Supreme Court reiterated "the well-established principle that a reviewing court may consider a claim raising a pure question of law on undisputed facts." But *Yeoman* concerned a claim of a type "otherwise identical to one that was properly preserved by a timely motion that called upon the trial court to consider the same facts and to apply a legal standard similar to that which would also determine the claim raised on appeal." (*Id*. at p. 117.) In Daniels's appeal, there is no other properly preserved claim already before us. Further, *Yeoman* does not stand for the proposition that there is a general exception to the normal rule that an issue is forfeited by failure to object in the trial court, and we find no reason to apply any such exception here.

Finally, we likewise decline to exercise our discretion to reach the merits of the claim to forestall a habeas petition based on defense counsel's failure to object, as Daniels has provided no persuasive argument (or any argument) why we should do so.

We conclude Daniels forfeited any claim on appeal of lack of notice as to the basis for the revocation of his probation.

C.    *Ineffective Assistance of Counsel*

Daniels asserts that, if this court finds his claim forfeited, we should hold that defense counsel's failure to object amounted to ineffective assistance of counsel. We conclude Daniels has not established he received ineffective assistance of counsel.

9

"A defendant claiming ineffective assistance of counsel under the federal or state Constitution must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a different outcome. [Citation.]" (*People v. Ochoa* (1998) 19 Cal.4th 353, 414.) " 'Reviewing courts defer to counsel's reasonable tactical decisions in examining a claim of ineffective assistance of counsel [citation], and there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ' [Citations.]" (*People v. Weaver* (2001) 26 Cal.4th 876, 925 (*Weaver*).) "Indeed, in assessing a Sixth Amendment attack on trial counsel's adequacy mounted on *direct appeal*, competency is *presumed* unless the record *affirmatively* excludes a rational basis for the trial attorney's choice. [Citations.]" (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1260.) Therefore, "[i]n the usual case, where counsel's trial tactics or strategic reasons for challenged decisions do not appear on the record, we will not find ineffective assistance of counsel on appeal unless there could be no conceivable reason for counsel's acts or omissions. [Citations.]" (*Weaver*, at p. 926.)

We examine whether defense counsel's performance was deficient due to a failure to object to the trial court's consideration and reliance on the drug charges, which were not part of the petition for modification of terms of probation. Daniels argues this constituted ineffective assistance and resulted in a violation of his due process rights.

Daniels relies in large part on two cases from this district: *People v. Mosley* (1988) 198 Cal.App.3d 1167 (*Mosley*) and *In re Babak S.* (1993) 18 Cal.App.4th 1077 (*Babak*).

The defendant in *Mosley* was placed on probation following a conviction for rape of an unconscious person. (*Mosley*, *supra*, 198 Cal.App.3d at p. 1169.) After an earlier revocation and reinstatement of probation, the defendant was arrested on a charge of rape and was arraigned on a new petition to revoke probation, the sole basis of which was the

10

new criminal charge. (*Id*. at p. 1170.) The probation revocation issue was set to be heard concurrently with the jury trial on the criminal charges. (*Ibid*.)

During the jury's deliberations, the trial court requested comment on the issue of revocation of probation and the district attorney "pointed out that her 'file reflects that it's a condition of his probation that he not consume any alcohol.' " (*Mosley*, *supra*, 198 Cal.App.3d at p. 1170.) "After the court confirmed that the original order did require [the defendant] to abstain from alcohol, both counsel briefly addressed the veracity and substance of the evidence at trial regarding [the defendant's] drinking." (*Ibid*.) The jury then returned a verdict of not guilty on the rape charge. (*Ibid*.) The court stated: " 'I can't say that I can find by clear and convincing evidence that the defendant committed a rape, but I certainly find him in violation of probation by clear and convincing evidence that he consumed alcohol. So I find him in violation of probation.' " (*Ibid*.)

Similar to the instant appeal, the defendant argued that "his lack of notice that consumption of alcohol would be a basis for revocation of probation denied him an opportunity to defend against that testimony and that, consequently, he was denied due process when the court considered the testimony of consumption of alcohol in making its decision to revoke probation and relied on the violation of the consumption of alcohol restriction as the sole basis for its decision to revoke his probation." (*Mosley*, *supra*, 198 Cal.App.3d at p. 1173.) The *Mosley* court observed that prior to the request from the district attorney to consider consumption of alcohol as a ground for revoking probation, "until that moment neither counsel for [the defendant] nor the court was aware that abstinence from alcohol was a condition of [the defendant's] probation." (*Id*. at pp. 1172-1173.) The court concluded the defendant was denied due process because the record did not disclose that the defendant was "offered additional time to answer the unnoticed allegation on which his revocation was based" and the "evidentiary phase of the hearing was completed before either he or the court was aware of the charge which

11

ultimately constituted the basis for revocation." (*Id*. at p. 1174.)  Consequently, the defendant "had no opportunity to prepare and defend against that allegation."  (*Ibid*.)

*Babak* concerned a petition for removal of a minor from the custody of his parents pursuant to Welfare and Institutions Code section 777, which alleged the minor had "violated the conditions of his probation by living in the United States with his parents, and by associating with a known probationer or gang member."  (*Babak*, *supra*, 18 Cal.App.4th at p. 1080.)  Rejecting the district attorney's argument that "the minor violated the probation order by 'living with his parents without [the probation officer's] permission,' " the *Babak* court stated:  "Unfortunately, this argument fails to take into account constitutional and statutory requirements of adequate notice.  Since the supplemental petition in this case did not allege the theory articulated by the People, the court's order may not be sustained on this basis.  [Citations.]"  (*Id*. at p. 1086, fn. omitted.)

Neither *Mosley* nor *Babak* establishes that Daniels could not receive proper notice that the drug charges could be a basis for probation revocation unless they were included in an amended petition.  They stand only for the proposition that adequate notice is required, not that a particular form must be employed.

In *Mosley*, the defendant had no opportunity to prepare and defend against the charge that served as the basis for probation revocation.  Daniels, however, received notice prior to the August 10 preliminary hearing in the form of a memorandum that specifically set forth the drug charges as "[c]ircumstances for violation of probation."  Rather than reflecting Daniels's ignorance of this fact, the record is actually replete with evidence that Daniels was aware this was one of the two bases for seeking revocation and that the matter would be heard concurrently with the preliminary examination on the new charges.  Daniels raised the issue of the pending Santa Clara charges in both his written and oral argument for release on his own recognizance pending the revocation hearing and acknowledged receipt of the police report.  At the preliminary hearing on August 10,

12

before taking evidence, the court stated it would be hearing the probation violation at the same time, based on the facts of the pending case and the Alameda arrest. We note that defense counsel could have informed the court had she not been ready to proceed. In fact, she did this with regard to the Alameda charges, stating, "I'm not able to effectively cross-examine without all of the discovery in the Alameda case for the probation violation." Moreover, Daniels's attorney had the opportunity to, and did, cross-examine Soto and argue regarding the drug charges which formed the basis for both the new case and the alleged probation revocation.

Similar circumstances have been found to provide sufficient notice. In *People v. Baker* (1974) 38 Cal.App.3d 625, 629, the defendant argued he was not given written notice of the probation violations charged against him. The court stated: "The record demonstrates otherwise. [Defendant's] attorney asked for a few minutes to read the supplemental report to [the defendant], saying his client did not read well. This statement implies [the defendant] had been given a copy of the report earlier. The court gave [the defendant] and his counsel one-half hour to re-read the two-page report. More important, neither [the defendant] nor his attorney objected they had inadequate notice of the charges. Absent objection, we will not imply inadequate notice from a record which is silent as to exactly how [the defendant] was given notice of the charges." (*Ibid*.; see also *Hawkins*, *supra*, 44 Cal.App.3d at p. 967; see also *People v. Buford* (1974) 42 Cal.App.3d 975, 982 [appellant could not claim denial of due process where the probation officer prepared a new report containing substantially the same allegations as the petition with which appellant had been served, but adding an additional ground for revocation, and where appellant did not contend that he had not been given the requisite notice].)

It has also long been established that the evidence adduced at a preliminary hearing can be the basis for a revocation of probation even without the benefit of a current probation report. (*People v. Santellanes* (1989) 216 Cal.App.3d 998, 1004

(*Santellanes*).) In *Santellanes*, the court concluded due process was "served by the [trial court's] utilization of evidence obtained at a preliminary hearing as the basis of probation revocation." (*Id*. at p. 1003.) Because the defendant "was given ample notice that the preliminary hearing on the drug charges would also serve as the preliminary hearing to determine whether there was sufficient cause to believe he had engaged in conduct in violation of his probation," the court held the due process requirements of *Morrissey*/*Vickers* were met despite a lack of a formal written notice of the basis for the revocation. (*Id*. at p. 1004.) Santellanes was provided "adequate notice that probation revocation was to be considered during the preliminary hearing, was present at the hearing, heard the evidence against him, had ample opportunity to present witnesses and documentary evidence, was represented by counsel who was free to confront and cross-examine adverse witnesses and was before a neutral and detached judicial officer." (*Ibid*.) Daniels received the same due process protections at the preliminary hearing at which the trial court also considered probation revocation.

Rather than affirmatively excluding a rational basis for Daniels's counsel's choice not to object on due process grounds to the use of the drug charges as a basis for probation revocation, the record shows why defense counsel may have chosen that course of action. Defense counsel may have reached the same conclusion we do: Daniels received sufficient notice of the new charges as a basis for revoking probation.

We conclude Daniels did not receive ineffective assistance of counsel, and we affirm the trial court's order.

### III.  DISPOSITION

The judgment is affirmed.

14

_____
Rodriguez, J.[*]

WE CONCUR:

_____
Grover, Acting P. J.

_____
Lie, J.

*People v. Daniels*
H050978

---

[*] Judge of the San Diego County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.